UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>        CARMEN BAILEY<br><br>        Debtor | Chapter 13<br><br>Case No. 09-44760 |
| CARMEN BAILEY<br>        Plaintiff<br>vs.<br><br>WELLS FARGO BANK, NA<br>        Defendant | Adversary Proceeding No. |

## VERIFIED COMPLAINT

### INTRODUCTION

Plaintiff brings this action for a declaratory judgment that the foreclosure sale conducted by defendant on or about October 23, 2009 was defective and a nullity; that the debtor's home is property of the estate pursuant to 11 U.S.C. §541; for an injunction to halt further foreclosure proceedings; for relief from unfair and deceptive practices under M.G.L. c. 93A; for recovery of money damages for Unjust Enrichment; and Infliction of Emotional Distress.

### PARTIES

1.      Plaintiff, Carmen Bailey, is an individual and the debtor in this pending Chapter 13 case, and resides at 111 Brigham St. #19B, Hudson, MA 01749.

2.      Upon information and belief, Defendant, Wells Fargo Bank, NA is a duly organized and existing national bank incorporated under the National Bank Act and has a mailing address of One Home Campus, Des Moines, IA 50328.

## JURISDICTION AND VENUE

3.      The Plaintiff resided in the jurisdiction for 180 days prior to the commencement of this

action, and thus venue of the bankruptcy case underlying this complaint is proper in Massachusetts

pursuant to 28 U.S.C. §1408, and venue of this action is proper pursuant to 28 U.S.C. §1409. The court

has jurisdiction to enter a final judgment.

4.      The relief sought by this complaint generally affects the adjustment of the debtor-

creditor relationship and therefore is a core proceeding within the meaning of 28 U.S.C. §157.

5.      An Adversary Proceeding is required by Fed. R. Bankr. Pro. 7001 because the plaintiff

is seeking, *inter alia*, a declaration to determine the validity of a lien; an injunction to halt foreclosure

proceedings; declaratory judgment; and to recover money damages.

## FACTS COMMON TO ALL COUNTS

6.      On or about May 21, 1984 Plaintiff and her former husband purchased the

condominium unit located at 111 Brigham St. Unit No. 19B, Hudson, MA 01749 as shown in a deed

recorded with the Middlesex South District Registry of Deeds[1] at Book 15587 Page 47 (the "Debtor's

Homestead").

7.      On or about February 18, 1992 Plaintiff purchased the interest of her former husband

pursuant to a judgment of divorce and modification agreement as shown in a deed recorded at Book

21800 Page 169.

8.      To finance the buy-out of her former husband, Plaintiff obtained a mortgage loan from

Shawmut Mortgage Company ("Shawmut") then of West Hartford, CT and signed a promissory note

for $104,000.00 (the "Note").   The mortgage was recorded at Book 21800 Page 170 and an authentic

copy is attached to this Complaint as Exhibit A (the "Mortgage").

---

[1]  All recording references hereafter are to the Middlesex South District Registry of Deeds.

9.     The Mortgage thereafter was assigned by Washington Mutual Bank (the "Assignor") to defendant Wells Fargo Bank, NA on March 22, 2007 by assignment recorded at Book 49268 Page 380, and authentic copy of which is attached to this Complaint as Exhibit B (the "Assignment").

10.    In the Assignment, Assignor Washington Mutual Bank claims it was formerly known as Washington Mutual Bank, FA.

11.    In the Assignment, the Assignor further claims Washington Mutual Bank, FA was successor by merger to Washington Mutual Home Loans, Inc.

12.    In the Assignment, the Assignor also claims Washington Mutual Home Loans, Inc. was successor by merger to Fleet Mortgage Corp.

13.    Nowhere in the Assignment does the Assignor indicate how the Mortgage was assigned from Shawmut to any of the aforesaid entities, or how any of the aforesaid entities came to be a holder of the Mortgage.

14.    On information and belief, no evidence of authority is recorded in the records of the Middlesex South District Registry of Deeds or indexed in Plaintiff's chain or title granting authority of Washington Mutual Bank to discharge or assign a mortgage of Shawmut.

15.    In fact, Washington Mutual Home Loans, Inc. did not merge with Washington Mutual Bank, FA as stated in the Assignment.  There is no record in the public records of the Secretary of State of Ohio that Washington Mutual Home Loans, Inc. ever merged with Washington Mutual Bank, FA.  See Exhibit C.

16.    Instead, according to the records of the Secretary of State of Ohio, Washington Mutual Home Loans, Inc. was "merged out of existence" when it merged into WMHLI Transfer Interim LP on or about February 27, 2002.  See Exhibit D.

17.    According to the records of the Secretary of State of Ohio, WMHLI Transfer Interim LP was then dissolved several days later on March 1, 2002.  See Exhibit D.

18.     On information and belief, there was thus no succession of corporate identity from Washington Mutual Home Loans, Inc. to Washington Mutual Bank, FA.

19.     On information and belief, there is no evidence of record showing assignment of the Mortgage from Shawmut to any other entity, or corporate succession from Shawmut to any other entity.

20.     On information and belief, the absence of recorded evidence in the Plaintiff's chain of title showing authority of the Assignor to assign the Mortgage puts a cloud on Plaintiff's title which would chill a prospective buyer and which negates defendant's claimed status as a holder of said mortgage.

21.     On information and belief, the absence of corporate succession from Washington Mutual Home Loans, Inc. to Washington Mutual Bank, FA creates a gap in the chain of ownership which impairs defendant's claim of status as a holder of the Mortgage.

22.     On information and belief, the succession of the promissory note underlying the Mortgage obligation followed the path alleged in the Assignment, thus there is no valid endorsement of the Note to the defendant.

23.     On or about August 26, 2009 defendant filed a petition with the Land Court division of the Trial Court of Massachusetts seeking a judgment to permit foreclosures under the Servicemembers Civil Relief Act.

24.     In said Land Court action, defendant falsely represented itself to be the "holder" of the Mortgage.  See Exhibit E.

25.     Massachusetts General Laws c. 244 §14 permits only "The mortgagee or person having his estate in the land mortgaged" to exercise the power of sale in a mortgage.

26.     A person in apparent possession of rights under a mortgage cannot claim to be a "holder" under G.L. c. 244 §14 unless he has a recorded assignment flowing to him, or evidence of

corporate succession of identity, from the original mortgagee.  See *In re Sima Schwartz*, U.S. Bankr. Ct., D. Mass., Chap. 7 Case No. 06-42476-JBR, Memorandum of Decision on Motion for Relief at 7 (Apr. 19, 2007), cited in U.S. Bank National Association as trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-Z v. Ibanez, Mass. Land Court No. 08-Misc-384283-KCL, Memorandum And Order On The Plaintiffs' Motions To Vacate Judgment, October 14, 2009 (and consolidated case Wells Fargo Bank, NA as trustee for ABFC 2005-OPT1 Trust, ABFC Asset Backed Certificates Series 2005-OPT1 v. Larace, No. 08-Misc-386755-KCL.

27.     In November, 2008 Plaintiff's income as a real estate broker declined rapidly and she fell into arrears on her mortgage payments.

28.     In April, 2009, the IRS asserted a federal tax lien for over $71,000 which she believed to be an error.

29.     Plaintiff called Defendant dozens of times between March, 2009 and September, 2009 attempting to work out a repayment plan or modification program.  She was placed on hold for many lengthy periods of time, but eventually Defendant sent her an application for a modification program.

30.     However, because of the IRS lien, Defendant told Plaintiff she would have to clear that lien first.

31.     Plaintiff thereupon retained Paul Benedetto, CPA of Northborough who prepared amended returns for 2001 and 2002 which were filed and she expects the IRS lien to be discharged.

32.     Plaintiff first learned of defendant's intent to foreclose by service of the Order of Notice from the Land Court by deputy sheriff, but such notice had no sale date.  See Exhibit E.  She immediately attempted to call Defendant without success; and then consulted Attorney Christopher Yates in Hudson who investigated and informed her that the foreclosure auction had already occurred.

33.     On information and belief, defendant conducted a foreclosure auction sale on October 23, 2009 at the premises.

34.     Plaintiff did not receive notice of said sale before October 23, 2009.

35.     On or about November 4, 2009 Plaintiff found a notice card from the U.S. Postal

Service among the leaves on her walkway indicating there was a certified letter for her at the post

office, but the time to claim it had passed.

## Count I

### Action for Declaratory Judgment under 28 U.S.C. §2201

36.     The plaintiff repeats and realleges all of the prior allegations of this complaint.

37.     The purported foreclosure sale by defendant was invalid under M.G.L. 244 §14 because

the defendant was not the "holder" of the mortgage and had no authority to exercise the power of sale,

and therefore was ineffective to foreclose the Plaintiff's equity of redemption.  See *In re Sima*

*Schwartz*, *Ibanez*, and *Larace*, *supra*.

WHEREFORE Plaintiff prays the Court enter judgment on her behalf declaring the rights and

legal relations of the parties, and in particular that:

a.      The defendant was not the holder of the Mortgage on October 23, 2009 and had

no authority to exercise the power of sale therein;

b.      The purported foreclosure sale was ineffective to foreclose the Debtor's equity

of redemption;

c.      The Debtor's Homestead is property of the bankruptcy estate under 11 U.S.C.

§541.

d.      The claim, if any, of the defendant, or others claiming on behalf of the Mortgage

or Note underlying the Mortgage, is unsecured debt since the lien is void by

reason of the dissolution of the last holder of record.

And Plaintiff prays further that the Court enter a Temporary Restraining Order, Preliminary

Injunction, and Permanent Injunction pursuant to 11 U.S.C. §105 that the defendant cease and desist

from executing or delivering or recording a foreclosure deed as a result of the purported sale on October 23, 2009.

## Count II

<u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

38.     The plaintiff repeats and realleges all of the prior allegations of this complaint.

39.     Defendant acted carelessly and recklessly in preserving the custody of important collateral and negotiable instruments, the Note and Mortgage, records of the chain of custody, recordable evidence of transfers of custody and status, recording of assignments, and the like, and in making false and erroneous assertions of assignment and corporate succession on the record title, and in doing so impaired the value of Plaintiff's real estate, quality of title, and caused her monetary harm.

40.     By its actions, the defendant failed to act in good faith or act fairly in its dealings with the Plaintiff.

WHEREFORE Plaintiff prays:

a.          That the court determine the damages caused to Plaintiff;

b.          That judgment enter for Plaintiff for the amount of her damages, including interest, costs, and punitive damages and attorneys fees;

c.          For such other relief as the Court deems just and proper.

## Count III

<u>Action for Infliction of Emotional Distress</u>

41.     The plaintiff repeats and realleges all of the prior allegations of this complaint.

42.     Plaintiff was home sick on October 23, 2009 and unaware of the existence of a planned foreclosure auction at her home that day.  She awoke to look out her front window and find an unknown commotion which she later learned was a foreclosure auction.

43.    As a result of learning that a foreclosure auction had been conducted on her home of 25 years without her advance knowledge, Plaintiff suffered extreme emotional distress.

44.    The conduct of the defendant in conducting a foreclosure auction without recorded evidence of authority and without adequate notice to the Plaintiff was extreme and outrageous, and beyond the bounds of decency in a civilized society.

44.    Defendant knew of should have known that its actions were likely to cause extreme emotional distress to the Plaintiff.

WHEREFORE Plaintiff prays:

a.    That the court determine the damages caused to Plaintiff;

b.    That judgment enter for Plaintiff for the amount of her damages, including interest, costs, and attorneys fees;

c.    For such other relief as the Court deems just and proper.

## Count IV

Action for Unjust Enrichment

45.    The plaintiff repeats and realleges all of the prior allegations of this complaint.

46.    Defendant accepted payments from Plaintiff without any apparent authority or entitlement thereto.

47.    By its actions, defendant has been unjustly enriched.

WHEREFORE Plaintiff prays:

a.    That the court determine the damages caused to Plaintiff;

b.    That judgment enter for Plaintiff for the amount of her damages, including interest, costs, and attorneys fees;

c.    For such other relief as the Court deems just and proper.

## Count V

<u>Action under Mass. G.L. c. 93A</u>

48.    The plaintiff repeats and realleges all of the prior allegations of this complaint.

49.    Defendant is engaged in trade or commerce within the meaning of M.G.L. c. 93A §9

and 11.

50.    The actions of the defendant constitute unfair and deceptive acts or practices declared

unlawful by M.G.L. c. 93A  §2.

51.    Defendant's conduct constitutes a willful and knowing violation of such statute.

52.    Plaintiff has suffered monetary loss as a result of defendant's conduct.

53.    As a result of defendant's conduct, Plaintiff has been severely damaged.

WHEREFORE Plaintiff prays for judgment against the defendant for her damages, including

triple damages, costs and attorneys fees.

Dated:  November 23, 2009

CARMEN BAILEY
BY HER ATTORNEY:


    /s/ Michael J. Tremblay
MICHAEL J. TREMBLAY,   BBO 502133
277 Main St.
Marlborough, MA 01752
Tel. 508-485-4500
Fax. 508-449-3969
Email:  attorney@tremblay.com


**VERIFICATION**

I, CARMEN BAILEY, state under the penalty of perjury that I have read the foregoing
Complaint, and that each of the allegations therein are true of my own personal knowledge, except those
allegations made on information and belief, and as to those matters I believe them to be true, and I

further state that the Exhibits attached to this Complaint are true and authentic copies of the originals obtained by me (with the aid of my attorney) from authentic public record sources.
Signed under the penalty of perjury.

Dated:  November 23, 2009



CARMEN BAILEY

Commonwealth of Massachusetts    } ss.        **Acknowledgment**
Middlesex

On this 23RD day of November , 2009, before me, the undersigned notary public, personally appeared CARMEN BAILEY, proved to me through satisfactory evidence of identification, which were Mass. Driver's License to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Michael J. Tremblay
Notary Public
Commonwealth of Massachusetts
My commission expires:  2-11-2011

Michael J. Tremblay
Notary Public
Commonwealth of Massachusetts
My Commission Expires: 2-11-2011

# Exhibit A

1220255

b-9

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **February 24**              ,19 92   .
The mortgagor is **Carmen M. Bailey**

("Borrower"). This Security Instrument is given to

**Shawmut Mortgage Company**                                         , which is organized and
existing under the laws of **Connecticut**
and whose address is
**433 South Main St. West Hartford, CT 06110.**        ("Lender").
Borrower owes Lender the principal sum of   **One Hundred Four Thousand and No/100 --------------**
**-------------------------**  Dollars (U.S. $ **104,000.00**      ). This debt is evidenced
by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on   **March 1, 2022**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in
**Middlesex**         County, Massachusetts:

which has the address of **111 Brigham Street, Unit #19B**                       , **Hudson**                    ,
                                                          [Street]                              [City]

Massachusetts     **01749**              ("Property Address");
                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**MASSACHUSETTS**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3022 9/90

UNI-FORM (R) / LMTGMA / 4-91

MSD 02/28/92 02:05:47   879   25.00

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lein on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. 2601 et. seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by the Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Secuity Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

2/24/97

Form 3022 9/90

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstnaces exist which are beyond Borrower's control. Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lein created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Form 3022 9/90

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail copies of a notice of sale to Borrower and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   _Carmen M Bailey_ 2/24/92 ____(Seal)
                                    Carmen M. Bailey              -Borrower

_____   _____(Seal)
                                                                -Borrower

_____   _____(Seal)
                                                                -Borrower

_____   _____(Seal)
                                                                -Borrower

───────────── [Space Below This Line For Acknowledgement] ─────────────

Commonwealth of Massachusetts

MIDDLESEX                    County ss:
                             **February 24, 1992**

Then personally appeared the above named   **Carmen M. Bailey**

and acknowledged the foregoing to be       free act and deed before me.

                                           _____
                                           Notary Public – PAUL V. GIANNETTI

                                           My commission expires:   __11/13/1992__

UNI-FORM (R) / LMTGMAS / 6-91                          **Form 3022 9/90**

UNIT:  2   BUILDING:  4            PERCENTAGE INTEREST:  2.41%

UNIT AREA:  2365 square feet  DESIGNATED PARKING:  garage

UNIT POST OFFICE ADDRESS:  19B    111 Brigham Street, Hudson,
Massachusetts  01749

GRANTOR, owner of the UNIT described above in Assabet Village
(the "Condominium") created by Master Deed (the "Master Deed")
dated April 13, 1981 and recorded April 14, 1981 with the
Middlesex County South District Registry of Deeds, Book 14262,
Page 353, as amended, in accordance with the provisions of
Massachusetts General Laws Chapter 183A, grants the UNIT to
GRANTEE with QUITCLAIM COVENANTS for the consideration stated
above.

The UNIT contains the AREA listed above and is laid out as shown
on a plan recorded with the Master Deed, as amended, and to which
is affixed a verified statement in the form provided for in
Massachusetts General Laws Chapter 183a, Section 9.

The UNIT is conveyed together with the above PERCENTAGE INTEREST
(a) in the Common Areas and Facilities of the Condominium, as
described in the Master Deed, and (b) in the Assabet Village
Condominium Trust (the "Condominium Trust"), dated April 13, 1981
and recorded April 14, 1981 with said Middlesex County South
District Registry of Deeds, Book 14262, Page 391, as amended.

The UNIT is to be used only for residential purposes and for no
other purposes, except as may be expressly permitted by the
Trustees in accordance with the provisions of the Master Deed and
the Condominium Trust.  The UNIT is also subject to the
restrictions contained in the Master Deed and the Condominium
Trust.

GRANTEE acquires the UNIT subject to the Right of First Refusal.

GRANTEE acquires the UNIT with the benefit of, and subject to,
the provisions of Massachusetts General Laws Chapter 183A,
relating to condominiums, as that statue is written as of the
date hereof, the Master Deed, the Condominium trust and the By-
Laws therein contained, as any or all may presently be amended,
and any rules and regulations from time to time adopted
thereunder, and all matters of record stated or referred to in
the Master Deed as completely as if each were fully set forth
herein.

Being the same premises conveyed to me by deed of Maurice G.T.
Bailey and Carmen M. Bailey to be recorded herewith.

## ADJUSTABLE RATE RIDER
(1 Year Treasury Index-Rate Caps-Fixed Rate Conversion Option)

THIS ADJUSTABLE RATE RIDER is made this 24th day of February 1992, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**Shawmut Mortgage Company**

(the "Lender") of the same date and covering the property described in the Security Instrument and Located at:
**111 Brigham Street, Unit #19B, Hudson, MA 01749**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY. THE NOTE ALSO CONTAINS THE OPTION TO CONVERT THE ADJUSTABLE RATE TO A FIXED RATE.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 5.3750 %. The Note provides for changes in the adjustable interest rate and the monthly payments, as follows:

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The adjustable interest rate I will pay may change on the first day of March 1993, and on that day every 12th month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Two and Three-Fourths** percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.3750 % or less than 3.3750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.3750 %, which is called the "Maximum Rate".

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### B. FIXED INTEREST RATE OPTION

The Note provides for the Borrower's option to convert from an adjustable interest rate with interest rate limits to a fixed interest rate, as follows:

### 5. FIXED INTEREST RATE CONVERSION OPTION

**(A) Option to Convert to Fixed Rate**

I have a Conversion Option that I can exercise unless I am in default or this Section 5(A) will not permit me to do so. The "Conversion Option" is my option to convert the interest rate I am required to pay by this Note from an adjustable rate with interest rate limits to the fixed rate calculated under Section 5(B) below.

The conversion can only take place on a date(s) specified by the Note Holder during the period beginning on the first Change Date and ending on the fifth Change Date. Each date on which my adjustable interest rate can convert to the new fixed rate is called the "Conversion Date."

**MULTISTATE ADJUSTABLE RATE RIDER - ARM PLAN 57** - Single Family    **FORM 3118, 1/89**
UNI-FORM(R) / MLM / LAR3118 / 6-89

If I want to exercise the Conversion Option, I must first meet certain conditions. Those conditions are that: (i) I must give the Note Holder notice that I want to do so; (ii) on the Conversion Date, I must not be in default under the Note or the Security Instrument; (iii) by a date specified by the Note Holder, I must pay the Note Holder a conversion fee of U.S. $ 0 ; and (iv) I must sign and give the Note Holder any documents the Note Holder requires to effect the conversion.

**(B) Calculation of Fixed Rate**

My new, fixed interest rate will be equal to the Federal National Mortgage Association's required net yield as of a date and time of day specified by the Note Holder for (i) if the original term of this Note is greater than 15 years, 30-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus five-eighths of one percentage point (0.625%), rounded to the nearest one-eighth of one percentage point (0.125%), or (ii) if the original term of this Note is 15 years or less, 15-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus five-eighths of one percentage point (0.625%), rounded to the nearest one-eighth of one percentage point (0.125%). If this required net yield cannot be determined because the applicable commitments are not available, the Note Holder will determine my interest rate by using comparable information. My new rate calculated under this Section 5(B) will not be greater than the Maximum Rate stated in Section 4(D) above.

**(C) New Payment Amount and Effective Date**

If I choose to exercise the Conversion Option, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe on the Conversion Date in full on the maturity date at my new fixed interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Beginning with my first monthly payment after the Conversion Date, I will pay the new amount as my monthly payment until the maturity date.

**C. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower exercises the Conversion Option under the conditions stated in Section B of this Adjustable Rate Rider, Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. If Borrower exercises the Conversion Option under the conditions stated in Section B of this Adjustable Rate Rider, the amendment to Uniform Covenant 17 of the Security Instrument contained in Section C 1 above shall then cease to be in effect, and the provisions of Uniform Covenant 17 of the Security Instrument shall instead be in effect, as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Carmen M Bailey_ 2/24/92 (Seal)
Carmen M. Bailey                              Borrower

_____ (Seal)
                                             Borrower

_____ (Seal)
                                             Borrower

_____ (Seal)
                                             Borrower

UNI-FORM(R) / MLM / LR31182 / 6-89
Form 3118  12/87

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 24th            day of February            , 19 92 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Shawmut Mortgage Company                                                                          (the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

111 Brigham Street, Unit #19B, Hudson, MA  01749
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

Assabet Village
[Name of the Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to the property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of one-twelfth of the yearly premium installments for Hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association Insurance policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, with any excess paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The Proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owner's Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Carmen M. Bailey_ 2/24/92  (Seal)
Carmen M. Bailey                     -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

MULTISTATE CONDOMINIUM RIDER - SINGLE FAMILY - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3140  9/90
UNI-FORM (R)  LCONDO / 3-91

# Exhibit B



2007 00064297
Bk: 49268 Pg: 390  Doc: ASM
Page: 1 of 1  04/10/2007 03:00 PM

WAMU #: 8012444512
Wells#: 8012444512
Pool #: FNMA 0000350026

### ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA SUCCESSOR BY MERGER TO WASHINGTON MUTUAL HOME LOANS, INC. SUCCESSOR BY MERGER TO FLEET MORTGAGE CORP., WHOSE ADDRESS IS 2210 ENTERPRISE DRIVE , FLORENCE, SC 29501, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **WELLS FARGO BANK, NA, WHOSE ADDRESS IS 1 HOME CAMPUS , DES MOINES, IA 50328, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**
Said Mortgage bearing the date 02/24/1992 , made and executed by: **CARMEN M BAILEY** as mortgager to **SHAWMUT MORTGAGE COMPANY** as mortgagee, in the Office of the Register of Titles and County Recorder in and for the County of MIDDLESEX SOUTH  and State of Massachusetts in Mortgage Book 21800 , Page 170 , Doc No 879

Property commonly known as: 111 BRIGHAM ST
HUDSON, MA 01749

In Testimony Whereof, the said corporation has caused these present to be executed in its corporate name by its ASST. VICE PRESIDENT  and its corporate seal to be hereunto affixed THIS 22ND DAY OF MARCH IN THE YEAR 2007
**WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA SUCCESSOR BY MERGER TO WASHINGTON MUTUAL HOME LOANS, INC. SUCCESSOR BY MERGER TO FLEET MORTGAGE CORP.**

(seal)

Washington Mutual Bank
Corporate Seal Has Not Been Adopted

BY:_____
BRYAN BLY  ASST. VICE PRESIDENT

STATE OF FLORIDA   COUNTY OF PINELLAS
On THIS 22ND DAY OF MARCH IN THE YEAR 2007 , before me, the undersigned notary public, personally appeared BRYAN BLY proved to me through satisfactory evidence of identification, which was a State issued Picture ID, to be the person whose name is signed on the preceding document, and acknowledged to me that he/she signed it voluntarily for its stated purpose as the ASST. VICE PRESIDENT  of WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA SUCCESSOR BY MERGER TO WASHINGTON MUTUAL HOME LOANS, INC. SUCCESSOR BY MERGER TO FLEET MORTGAGE CORP.  a corporation.

_____
MARIA LEONOR GERHOLDT  Notary Public
My commission expires: 05/26/2009

MARIA LEONOR GERHOLDT
Notary Public State of Florida
My Commission Exp. May 26, 2009
No. DD 0434521
Bonded through (800) 432-4254
Florida Notary Assn. Inc

Instrument Prepared By: J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To: Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

 USS WMASN 6924102  CJ1345734

# Exhibit C

BS_QRY_BUS_FILING_DET                                    http://www2.sos.state.oh.us/pls/portal/PORTAL_BS.BS_QRY_BUS...

# JENNIFER BRUNNER
## OHIO SECRETARY OF STATE

Home  |  About  |  Businesses  |  Voter Services  |  Candidates  |  Elections & Ballot Issues  |  Other Records  |  Better Lives  |
Voting Rights Institute  |  Media Center

## BUSINESS FILINGS
### PROMOTING BUSINESS GROWTH

BS_QRY_BUS_FILING_DET                    http://www2.sos.state.oh.us/pls/portal/PORTAL_BS.BS_QRY_BUS...

## Business Filing Information

| Business Name | Filing Type | Filing Date | Doc Id *Click for Image !* | Additional Filing Type Info |
|---|---|---|---|---|
| WASHINGTON MUTUAL HOME LOANS, INC. | Domestic Articles/For Profit | May 17 1962 | B261_1846 | |
| | Domestic/Amendment To Articles | Jun 15 1962 | B265_0523 | |
| | Domestic/Amendment To Articles | Feb 09 1963 | B293_1064 | Increase Of Authorized Stock Shares |
| | Domestic/Amendment To Articles | Jan 31 1964 | B343_0343 | |
| | Domestic/Amendment To Articles | Dec 21 1964 | B386_0550 | |
| | Domestic/Amendment To Articles | Apr 28 1965 | B404_1876 | Domestic Change Of Location |
| | Domestic/Amendment To Articles | May 01 1972 | B803_1909 | Change Of Name |
| | Merger/Domestic | Nov 23 1973 | B925_0949 | |
| | Merger/Domestic | Nov 23 1973 | B925_0964 | |
| | Merger/Domestic | Nov 28 1973 | B926_1595 | |
| | Merger/Domestic | Nov 28 1973 | B926_1610 | |
| | Merger/Domestic | Nov 30 1973 | B927_1267 | |
| | Domestic/Amendment To Articles | Jun 17 1976 | E162_0514 | |
| | Domestic Agent Subsequent Appointment | Jun 17 1976 | E162_0514 | Domestic Change Of Location |
| | Domestic/Amended Restated Articles | Jun 30 1977 | E290_1323 | Decrease Of Authorized Shares Of Stock |
| | Merger/Domestic | Jul 31 1979 | E639_0789 | |
| | Domestic Agent Address Change | Dec 10 1983 | F471_1285 | |
| | Domestic Agent Address Change | Nov 12 1984 | F606_1881 | |
| | Domestic/Amendment To Articles | Mar 04 1986 | F854_1729 | Change Of Name |
| | Domestic Continued Existence Letter | Sep 09 1993 | 000000361379 | |

Next

help

11/22/2009 12:33 PM

# JENNIFER BRUNNER
## OHIO SECRETARY OF STATE

Home | About | Businesses | Voter Services | Candidates | Elections & Ballot Issues | Other Records | Better Lives | Voting Rights Institute | Media Center

## BUSINESS FILINGS
PROMOTING BUSINESS GROWTH



## Business Filing Information

| Business Name | Filing Type | Filing Date | Doc Id *Click for Image !* | Additional Filing Type Info |
|---|---|---|---|---|
| WASHINGTON MUTUAL HOME LOANS, INC. | Domestic/Amendment To Articles | Dec 01 1993 | 9319_1237 | |
| | Miscellaneous Filing | Dec 01 1993 | 9319_1237 | Change Of Name, Transcript Check |
| | Domestic Continued Existence | Dec 07 1993 | 000000361380 | |
| | Merger/Domestic | Sep 08 1997 | 6021_0518 | |
| | Miscellaneous Filing | Sep 08 1997 | 6021_0518 | |
| | Domestic Agent Address Change | Sep 23 1998 | 199827202695 | |
| | Agent Name/Address Tax Update | Jan 08 1999 | AGNTUPDT | |
| | Agent Name/Address Tax Update | Feb 01 1999 | AGNTUPDT | |
| | Agent Name/Address Tax Update | Apr 07 1999 | AGNTUPDT | |
| | Domestic/Amendment To Articles | Feb 01 2001 | 200103902120 | Change Of Name |
| | Merger/Domestic | Jun 01 2001 | 200115501128 | Change-Amendment, Increase Of Authorized Stock Shares |
| | Merged Out Of Existence | Mar 01 2002 | 200206000060 | |

Previous

help

# Exhibit D

| DATE:<br>02/08/2002 | DOCUMENT ID<br>200203900330 | DESCRIPTION<br>LIMITED PARTNERSHIP (CLP) | FILING<br>125.00 | EXPED<br>100.00 | PENALTY<br>.00 | CERT<br>.00 | COPY<br>.00 |

### Receipt

*This is not a bill. Please do not remit payment.*

CSC/DIAMOND ACCESS
50 W. BROAD STREET, SUITE 1800
LISA
COLUMBUS, OH 43215

---

# STATE OF OHIO

### Ohio Secretary of State, J. Kenneth Blackwell

#### 1296473

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**WMHLI TRANSFER INTERIM LP**

and, that said business records show the filing and recording of:

Document(s)                                    Document No(s):

**LIMITED PARTNERSHIP**                         **200203900330**

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 7th day of February, A.D.
2002.

*J. Kenneth Blackwell*

Ohio Secretary of State

United States of America
State of Ohio
Office of the Secretary of State

Feb-08-02  10:18am  From-Washington Mutual Legal Dept    ID+    PAGE  2/2

Prescribed by **J. Kenneth Blackwell**

Please obtain fee amount and mailing instructions from the Filing
Reference Guide ( using the 3 digit form # located at the bottom of this
form). To obtain the Filing Reference Guide or for assistance, please
call Customer Service:

Central Ohio: (614)-466-3910   Toll Free: 1-877-SOS-FILE (1-877-767-3453)

RECEIVED
SECRETARY OF STATE
2002 FEB -7 PM 4: 05
CLIENT SERVICE CENTER

## CERTIFICATE OF LIMITED PARTNERSHIP

The undersigned, desiring to form a limited partnership in accordance with Ohio Revised Code Chapter 1782, do hereby certify
as follows:

1.  The name of the limited partnership shall be:
    WAMU Transfer Interim LP

2.  The address of the principal place of business of the partnership shall be:
    1201 Third Avenue
    _____(street address)_____
    Seattle                                    WA          98101
    (city, township, or village)              (state)      (zip code)

3.  The name and address of the limited partnership's agent for service of process in Ohio is:
    CSC-Lawyers Incorporating Service (Corporation         50 West Broad Street
    Service Company)      (name)                           (street and number  P.O. Boxes are not acceptable)
    Columbus                    , Ohio        43215
    (city, village or township)                (zip code)

4.  The name and business or residence address of each **GENERAL PARTNER** is:
    Name                          Address
    Washington Mutual Bank, FA    1201 Third Avenue, Seattle, WA  98101
    _____
    _____
    _____
    _____
    _____
              (If insufficient space to cover this item, please attach additional sheet)

5.  Other provisions (optional):
    _____
    _____
    _____
    _____
              (If insufficient space to cover this item, please attach additional sheet)

IN WITNESS WHEREOF, the undersigned have caused this Certificate to be executed on    February 6, 2002
By:  Washington Mutual Bank, FA,
     General Partner
Signed _____          Signed _____
Name: Fay L. Chapman, Senior Executive Vice    Name: _____
Signed _____  President    Signed _____
Name: _____          Name: _____
     (If insufficient space for all signatures, please attach a separate sheet containing additional signatures)

141-CLP                    Page 1 of 1                    Version: 7/1/01

| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|
| 03/01/2002 | 200206000060 | MERGER/DOMESTIC (MER) | 125.00 | 100.00 | .00 | .00 | .00 |

**Receipt**

This is not a bill. Please do not remit payment.

CSC/DIAMOND ACCESS
50 W. BROAD STREET, SUITE 1800
ATTN: LISA VAIDO
COLUMBUS, OH 43215

# STATE OF OHIO

### Ohio Secretary of State, J. Kenneth Blackwell

#### 1296473

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**WMHLI TRANSFER INTERIM LP**

and, that said business records show the filing and recording of:

Document(s)                                                                 Document No(s):

**MERGER/DOMESTIC**                                            **200206000060**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 1st day of March, A.D.
2002.

Ohio Secretary of State

Page 1

| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|-------|-------------|-------------|--------|-------|---------|------|------|
| 03/01/2002 | 200206000060 | MERGED OUT OF EXISTENCE (MEX) | .00 | .00 | .00 | .00 | .00 |

### Receipt

This is not a bill. Please do not remit payment.

CSC/DIAMOND ACCESS
50 W. BROAD STREET, SUITE 1800
ATTN: LISA VAIDO
COLUMBUS, OH 43215

---

# STATE OF OHIO

### Ohio Secretary of State, J. Kenneth Blackwell

#### 310795

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**WASHINGTON MUTUAL HOME LOANS, INC.**

and, that said business records show the filing and recording of:

Document(s)                                    Document No(s):

**MERGED OUT OF EXISTENCE**                     **200206000060**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 1st day of March, A.D.
2002.

*J. Kenneth Blackwell*

Ohio Secretary of State



Prescribed **by J. Kenneth Blackwell**

Ohio Secretary of State
Central Ohio: (614) 466-3910
Toll Free: 1-877-SOS-FILE (1-877-767-3453)

www.state.oh.us/sos
e-mail: busserv@sos.state.oh.us

| Expedite this Form: (Select One) |
|---|
| **Mail Form to one of the Following:** |
| ⦿ Yes    PO Box 1390    Columbus, OH 43216 |
| *** Requires an additional fee of $100 *** |
| ○ No    PO Box 1329    Columbus, OH 43216 |

# CERTIFICATE OF MERGER

(For Domestic or Foreign, Profit or Non-Profit)
Filing Fee $125.00
(154-MER)

In accordance with the requirements of Ohio law, the undersigned corporations, banks, savings banks, savings and loan, limited liability companies, limited partnerships and/or partnerships with limited liability, desiring to effect a merger, set forth the following facts:

I. SURVIVING ENTITY

  A. The name of the entity surviving the merger is:

    WMHLI Transfer Interim LP

  B. Name Change: As a result of this merger, the name of the surviving entity has been changed to the following:

    (Complete only if name of surviving entity is changing through the merger)

  C. The surviving entity is a:   **(Please check the appropriate box and fill in the appropriate blanks)**

    ☐ Domestic (Ohio) For-Profit Corporation, charter number _____

    ☐ Domestic (Ohio) Non-Profit Corporation, charter number _____

    ☐ Foreign (Non-Ohio) Corporation incorporated under the laws of the state/country of _____ and licensed to transact business in the State of Ohio under license number _____

    ☐ Foreign (Non-Ohio) Corporation incorporated under the laws of the state/country of _____ and **NOT** licensed to transact business in the state of Ohio,

    ☐ Domestic (Ohio) Limited Liability Company, with registration number _____

    ☐ Foreign (Non-Ohio) Limited Liability Company organized under the laws of the state/country of _____ and registered to do business in the State of Ohio under registration number _____

    ☐ Foreign (Non-Ohio) Limited Liability Company organized under the laws of the state/country of _____ and NOT registered to do business in the State of Ohio.

    ☑ Domestic (Ohio) Limited Partnership, with registration number   1296473

    ☐ Foreign (Non-Ohio) Limited Partnership organized under the laws of the state/country of _____ and registered to do business in the state of Ohio under registration number _____

*(vertical stamp text)* CLIENT SERVICE CENTER   2002 FEB 27 PM 4:24   RECEIVED SECRETARY OF STATE

☐ Foreign (Non-Ohio) Limited Partnership organized under the laws of the state/country of
and **NOT** registered to do business in the state of Ohio.    _____

☐ Domestic (Ohio) Partnership having limited liability, with the registration number _____

☐ Foreign (Non-Ohio) Partnership having limited liability organized under the laws of the state/country of
_____ and registered to do business in the state of Ohio under registration number
_____

☐ Foreign (Non-Ohio) Non-Profit Incorporation under the laws of the state/county of
and licensed to transact business in the state of Ohio under license number    _____

☐ Foreign (Non-Ohio) Non-Profit Incorporation under the laws of the state/county of
and **not** licensed to transact business in the state of Ohio.    _____

**II. MERGING ENTITY**
The name, charter/license/registration number, type of entity, state/country of incorporation or organization,
respectively, of which is the entities merging out of existence are as follows: **(if this is insufficient space to reflect
all merging entities, please attach a separate sheet listing the merging entities)**

*(Please list the Ohio charter, license/registration no. below)*

| Name  /  charter, license or registration number | State/Country of Organization | Type of Entity |
|---|---|---|
| Washington Mutual Home Loans, Inc., 310795 | Ohio | Corporation |
| | | |
| | | |
| | | |

**III. MERGER AGREEMENT ON FILE**
The name and mailing address of the person or entity from whom/which eligible persons may obtain a copy of the
agreement of merger upon written request:

| Washington Mutual Bank, FA | 1201 Third Avenue |
|---|---|
| (name) | (street)    *NOTE: P.O. Box Addresses are NOT acceptable.* |
| Seattle | Washington    98101 |
| (city, village or township) | (state)    (zip code) |

**IV. EFFECTIVE DATE OF MERGER**
This merger is to be effective on:    March 1, 2002    (if a date is specified, the date must be a date on or
after the date of filing; the effective date of the merger cannot be earlier than the date of filing, if no date is
specified, the date of filing will be the effective date of the merger).

**V. MERGER AUTHORIZED**
The laws of the state or country under which each constituent entity exists, permits this merger.
This merger was adopted, approved and authorized by each of the constituent entities in compliance with the laws
of the state under which it is organized, and the persons signing this certificate on behalf of each of the constituent
entities are duly authorized to do so.

VI. STATUTORY AGENT
The name and address of the surviving entity's statutory agent upon whom any process, notice or demand may be served is:

CSC - Lawyers Incorporating Service _____ 50 West Broad Street _____
(name)                                      (street)    NOTE: P.O. Box Addresses are NOT acceptable.

Columbus _____ , Ohio   43215 _____
                (city, village or township)            (zip code)

(This item MUST be completed if the surviving entity is a foreign entity which is not licensed, registered or otherwise authorized to conduct business in the state of Ohio)

VII. ACCEPTANCE OF AGENT
The undersigned, named herein as the statutory agent for the above referenced surviving entity, hereby acknowledges and accepts the appointment of statutory agent for said entity.

**Signature of Agent** _____

(The acceptance of agent must be completed by the surviving entities if through this merger the statutory agent has changed, or the named agent differs in any way from the name currently on record with the Secretary of State.)

VIII. STATEMENT OF MERGER
Upon filing, or upon such later date as specified herein, the merging entity/entities listed herein shall merge into the listed surviving entity

IX. AMENDMENTS
The articles of incorporation, articles of organization, certificate of limited partnership or registration of partnership having limited liability (circle appropriate term) of the surviving domestic entity have been amended.
☐ Attachments are provided          ☑ No Changes

X. QUALIFICATION OR LICENSURE OF FOREIGN SURVIVING ENTITY
A. The listed surviving foreign corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability desires to transact business in Ohio as a foreign corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability, and hereby appoints the following as its statutory agent upon whom process, notice or demand against the entity may be served in the state of Ohio.  The name and complete address of the statutory agent is:

_____    _____
(name)                                    (street)    NOTE: P.O. Box Addresses are NOT acceptable.

_____ , Ohio   _____
(city, village or township)                   (zip code)

The subject surviving foreign corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability irrevocably consents to service of process on the statutory agent listed above as long as the authority of the agent continues, and to service of process upon the Secretary of State of Ohio if the agent cannot be found, if the corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability fails to designate another agent when required to do so, or if the foreign corporation's, bank's, savings bank's, savings and loan's, limited liability company's, limited partnership's or partnership having limited liability's license or registration to do business in Ohio expires or is canceled.

551                          Page 3 of 7                    Last Revision: Jan. 2002

B. The qualifying entity also states as follows: (Complete only if applicable)

1. **Foreign Notice Under Section 1703.031**
   (If the qualifying entity is a foreign bank, savings bank, or savings and loan, then the following information must be completed.)

   (a.) The name of the Foreign Nationally/Federally chartered bank, savings bank, or savings and loan association is

   _____

   (b.) The name(s) of any Trade Name(s) under which the corporation will conduct business:

   _____

   _____

   _____

   (c.) The location of the main office (non-Ohio) shall be:

   _____
   (street address)                        *NOTE: P.O. Box Addresses are NOT acceptable.*

   _____
   (city, township, or village)      (county)       (state)       (zip code)

   (d.) The principal office location in the state of Ohio shall be:

   _____
   (street address)                        *NOTE: P.O. Box Addresses are NOT acceptable.*

   _____
   (city, township, or village)      (county)    **Ohio**    (zip code)
                                                   (state)

   **(Please note, if there will not be an office in the state of Ohio, please list none.)**

   (e.) The corporation will exercise the following purpose(s) in the state of Ohio:
        (Please provide a brief summary of the business to be conducted; a general clause is not sufficient)

   _____

   _____

2. **Foreign Qualifying Limited Liability Company**
   (If the qualifying entity is a foreign limited liability company, the following information must be completed.)

   (a.) The name of the limited liability company in its state of organization/registration is

   _____

   (b.) The name under which the limited liability company desires to transact business in Ohio is

   _____

   (c.) The limited liability company was organized or registered on _____
        *under the laws of the state/country of* _____

(d.) The address to which interested persons may direct requests for copies of the articles of organization, operating agreement, bylaws, or other charter documents of the company is:

_____    NOTE:  P.O. Box Addresses are NOT acceptable.
(street address)

_____    _____    _____
(city, township, or village)                (state)          (zip code)

**3. Foreign Qualifying Limited Partnership**
(If the qualifying entity is a foreign limited partnership, the following information must be completed).

(a.) The name of the limited partnership is

_____

(b.) The limited partnership was formed on _____

(c.) The address of the office of the limited partnership in its state/country of organization is:

_____    NOTE:  P.O. Box Addresses are NOT acceptable.
(street address)

_____    _____    _____    _____
(city, township, or village)    (county)        (state)          (zip code)

(d.) The limited partnership's principal office address is:

_____    NOTE:  P.O. Box Addresses are NOT acceptable.
(street address)

_____    _____    _____    _____
(city, township, or village)    (county)        (state)          (zip code)

(e.) The names and business or residence addresses of the General partners of the partnership are as follows:

Name                        Address

_____    _____

_____    _____

_____    _____

(If insufficient space to cover this item, please attach a separate sheet listing the general partners and their respective addresses)

(f.) The address of the office where a list of the names and business or residence addresses of the limited partners and their respective capital contributions is to be maintained is:

_____    NOTE:  P.O. Box Addresses are NOT acceptable.
(street address)

_____    _____    _____    _____
(city, township, or village)    (county)        (state)          (zip code)

The limited partnership hereby certifies that it shall maintain said records until the registration of the limited partnership in Ohio is canceled or withdrawn.

4. **Foreign Qualifying Partnership Having Limited Liability**

(a.)  The name of the partnership shall be

(b.)  Please complete the following appropriate section (either item b(i) or b(2)):

(1.)  The address of the partnership's principal office in Ohio is:

(street address)        NOTE:  *P.O. Box Addresses are NOT acceptable.*

_____, Ohio
(city, village or township)        (zip code)

*(If the partnership does not have a principal office in Ohio, then items b2 must be completed)*

(2.)  The address of the partnership's principal office (Non-Ohio):

(street address)        NOTE:  *P.O. Box Addresses are NOT acceptable.*

(city, township, or village)        (state)        (zip code)

(c.)  The name and address of a statutory agent for service of process in Ohio is as follows:

(name)

(street address)        NOTE:  *P.O. Box Addresses are NOT acceptable.*

_____, Ohio
(city, village or township)        (zip code)

(d.)  Please indicate the state or jurisdiction in which the Foreign Limited Liability Partnership has been formed

(e.)  The business which the partnership engages in is:

551        Page 6 of 7        Last Revision: Jan. 2002

*The undersigned constituent entities have caused this certificate of merger to be signed by its duly authorized officers, partners and representatives on the date(s) stated below.*

WASHINGTON MUTUAL HOME LOANS, INC.
(Exact name of entity)

By: _____

Its: Thomas M. Jenkins, Vice President

Date: February 25, 2002

WMHLI TRANSFER INTERIM LP
(Exact name of entity)

By: Washington Mutual Bank, FA

Its: sole general partner

By: _____

By: William L. Lynch, First Vice President and Corporate Secretary

Date: February 25, 2002

_____
(Exact name of entity)

By: _____

Its: _____

Date: _____

_____
(Exact name of entity)

By: _____

Its: _____

Date: _____

_____
(Exact name of entity)

By: _____

Its: _____

Date: _____

_____
(Exact name of entity)

By: _____

Its: _____

Date: _____

_____
(Exact name of entity)

By: _____

Its: _____

Date: _____

_____
(Exact name of entity)

By: _____

Its: _____

Date: _____

_____
(Exact name of entity)

By: _____

Its: _____

Date: _____

| DATE:<br>03/04/2002 | DOCUMENT ID<br>200206300128 | DESCRIPTION<br>CANCELLATION/LIMITED<br>PARTNERSHIP (LPC) | FILING<br>50.00 | EXPED<br>100.00 | PENALTY<br>.00 | CERT<br>.00 | COPY<br>.00 |

## Receipt
This is not a bill. Please do not remit payment.

CSC/DIAMOND ACCESS
50 W. BROAD STREET, SUITE 1800
COLUMBUS, OH 43215

---

# STATE OF OHIO

### Ohio Secretary of State, J. Kenneth Blackwell

#### 1296473

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**WMHLI TRANSFER INTERIM LP**

and, that said business records show the filing and recording of:

Document(s)                                                    Document No(s):

**CANCELLATION/LIMITED PARTNERSHIP**                    **200206300128**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 1st day of March, A.D.
2002.

*J. Kenneth Blackwell*

Ohio Secretary of State

---

Page 1



Prescribed by **J. Kenneth Blackwell**
Ohio Secretary of State
Central Ohio: (614) 466-3910
Toll Free: 1-877-SOS-FILE (1-877-767-3453)

www.state.oh.us/sos
e-mail: busserv@sos.state.oh.us

| Expedite this Form: (Select One) |
|---|
| **Mail Form to one of the Following:** |
| ● Yes    PO Box 1390 |
| Columbus, OH 43216 |
| *** Requires an additional fee of $100 *** |
| ○ No    PO Box 1028 |
| Columbus, OH 43216 |

### Certificate of Cancellation / Cancellation Amendment
### Withdrawal of Limited Partnership or Partnership Having Limited Liability
*(Domestic or Foreign)*
Filing Fee $50.00

**(CHECK ONLY ONE (1) BOX)**

| (1) Limited Partnership Cancellation | (2)    Limited Partnership Cancellation Amendment (101-LPN) | (3) ☐ Withdraw of Partnership Having Limited Liability (156-PLW) |
|---|---|---|
| ☑ Domestic  *(133-LPC)* | | Date of Withdraw _____ (Date) |
| ☐ Foreign    *(132-FPC)* | | |

**Complete the general information in this section for the box checked above.**

Name of Partnership        WMHLI Transfer Interim LP

Registration Number        1296473

**Complete the information in this section if Domestic is checked in box (1).**

Date of initial filing        February 7, 2002
                                        (Date)

Date of filing with Secretary of State    _____
                                                                (Date)

Reason for filing certificate of cancellation

| The Partnership ceasing to have a least two Partners. |
|---|

The effective date of cancellation: ( please check/complete one of the following)

☑ Upon Filing of Certificate of Cancellation    _____
                                                                          (Date)

*(Please note that the effective date of cancellation cannot precede or be earlier than the date of filing)*

Is a person other than any general partner reflected on the certificate of limited partnership winding up the limited partnership's affairs?    ☐ Yes    ☑ No
                                                                              (Please check applicable box)

If "Yes" was checked above, the name and the business, residence or mailing address of each liquidating trustee must be listed in the following space:

Name                                        Street Address                                        City/State/Zip

| |
|---|

| *( If insufficient space for this item, please attach a separate sheet)* |
|---|

883                                        Page 1 of 3                                        Last Revised:  Jan. 2002

**Complete the information in this section if Domestic is checked in box (1) Cont.**

Other ( Optional )

*(If insufficient space for this item, and you are filing by paper submission, please attach a separate sheet(s): this portion of the certificate may not exceed three (3) additional pages, ORC 1782.10(B)(6))*

**Complete the information in this section if Foreign is checked in box (1).**

A Foreign Limited Partnership, formed under the laws of the state or country of _____

and registered to transact business in Ohio on _____ certifies that said Foreign Limited
Partnership is not longer transacting business in the State of Ohio and hereby states that said Foreign Limited
Partnership surrenders its authority to transact business in Ohio.

**Complete the information in this section if box (2) is checked.**

The amendment is submitted for the following reason(s):

☐ a new liquidating trustee(s) has/have been named      *(If this box has been checked, please complete the following):*

If space for trustees is insufficient, and you are filing by paper submission, please attach a separate sheet containing
the additional names and addresses

Name and Address

☐ the following liquidating trustee(s) has/have ceased to serve as such
*(If this box has been checked, please complete the following):*

If space for trustees is insufficient, and you are filing by paper submission, please attach a separate sheet containing
the additional names and addresses

Name of former liquidating trustee(s):

563                            Page 2 of 3                            Last Revised: Jan. 2002

| Complete the information in this section if box (2) is checked Cont. |
|---|

☐ the address of a named liquidating trustee has changed
*(if this box has been checked, please complete the following):*

If space for trustees is insufficient, and you are filing by paper submission, please attach a separate sheet containing the additional names and addresses

Name of liquidating trustee                    New

_____

_____

_____

_____

_____

_____

Must be authenticated by an
authorized representative

| See Below | | March 1, 2002 |
|---|---|---|
| Authorized Representative | | Date |

| | | |
|---|---|---|
| Authorized Representative | | Date |

| | | |
|---|---|---|
| Authorized Representative | | Date |

WMHLI INTERIM TRANSFER LP, on Ohio
limited partnership

By:  Washington Mutual Bank, FA,
     its sole general partner

By:  _____
     Fay L. Chapman,
     Senior Executive Vice President

Date:  March 1, 2002

# Exhibit E

(SEAL)

## THE COMMONWEALTH OF MASSACHUSETTS
## LAND COURT
## DEPARTMENT OF THE TRIAL COURT

To:

Carmen M. Bailey

2009  00188077
Bk: 53584 Pg: 270   Doc: ORDNO
Page: 1 of 1   09/25/2009 10:54 AM

09 MISC 399734

Wells Fargo Bank, NA

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.

Wells Fargo Bank, NA

claiming to be the holder of      a          Mortgage
covering real                          property in  Hudson,
                                       numbered     111 Brigham Street, Unit No. 2, Bldg. No. 4
                                                    a/k/a  Unit  No.  19B,  Assabet  Village
                                                    Condominium

given by     Carmen M. Bailey to Shawmut Mortgage Company, dated February 24, 1992, and  recorded
with the Middlesex County (Southern District)  Registry of Deeds at Book 21800, Page 170 and now
held by the plaintiff by assignment

has filed with said court a complaint for authority to foreclose said mortgage

in the manner following:  by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Servicemembers Civil Relief Act as amended and you object to such
foreclosure  you or your  attorney should file  a written  appearance and answer in  said court at Boston on
or before  OCT 1 2 2009

or you may be forever barred from claiming that such foreclosure is invalid under said act.
Witness, **KARYN F. SCHEIER**, Chief Justice of said Court on  AUG 2 6 2009

A TRUE COPY
Attest: ATTEST:

Deborah J. Patterson
RECORDER

HARMON LAW OFFICES, P.C.
P.O. BOX 610389

**DEBORAH J. PATTERSON**
**RECORDER**

200904-2296-YEL