**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br>　　Carmen Bailey<br><br>　　　　　　　　　Debtor | Case No. 09-44760<br><br>Chapter 13 |
| Carmen Bailey<br>　　　　　　　　　Plaintiff<br><br>v.<br><br>Wells Fargo Bank, NA<br>　　　　　　　　　Defendant | AD. Pro. No. 09-04190 |

### DEFENDANT, WELLS FARGO BANK, NA'S SUPPLEMENTAL MEMORANDUM OF SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Now comes the Defendant, Wells Fargo Bank, N.A(hereinafter "Wells") and supplements its previously filed Motion to Dismiss the Complaint pursuant to Mass R. Civ. P. Rule 12(b)(6) as Plaintiff fails to state a claim against Wells for which relief can be granted. Wherefore, Wells requests that the Complaint be dismissed as against Wells and grant Wells such further relief as is appropriate and just.

As further grounds thereof the Defendants state the following (All documents referenced below have been previously filed with this Honorable Court):

# RESTATEMENT OF FACTUAL AND PROCEDURAL HISTORY

1. On or about February 18, 1992, Maurice G. T. Bailey and Carmen M. Bailey conveyed the property known as 111 Brigham Street, Unit No. 19B in Hudson Massachusetts (hereinafter the "Property") to Carmen M. Bailey. Said Deed is recorded with the Middlesex County Registry of Deeds at Book 21800, Page 168.

2. On or about February 24, 1992 Carmen M. Bailey executed a Mortgage encumbering the Property as security for a Note in the amount of $104,000.00 in favor of Shawmut Mortgage Company. Said Mortgage is recorded with the Middlesex County Registry of Deeds at Book 21800, Page 170.

3. On or about May 30, 1996, Shawmut Mortgage merged with Fleet Mortgage Corporation.

4. On or about May 31, 1996, Fleet Mortgage Corporation successor by Merger to Shawmut Mortgage Company assigned the Note and Mortgage to Fleet Mortgage Corporation.

5. On or about June 1, 2002, Fleet Mortgage Corp. merged with Washington Mutual Home Loans, Inc.

6. On or about June 21, 2002, Washington Mutual Mortgage Securities Corp. formed WHMLI. Washington Mutual Home Loans, Inc., thereafter was merged with and into the Limited Partnership.

7. On or about June 28, 2002 the Massachusetts Land Court issued an Order that all assets standing in the name of Washington Mutual Home Loans, Inc. be deemed assigned to and stand in the name of Washington Mutual Bank, FA, effective as of March 1, 2002.

8. On or about August 17, 2006, Washington Mutual Bank, NA changed its corporate title to Washington Mutual Bank effective April 4, 2005.

9. On or about March 22, 2007, Washington Mutual Bank F/K/A Washington Mutual Bank, FA Successor by Merger to Washington Mutual Home Loans Inc. successor by merger to Fleet Mortgage Corp. assigned the Note and Mortgage to Wells Fargo Bank, NA.

10. On or about January 1, 2009, Plaintiff defaulted on the Note and Wells Fargo retained the legal services of Harmon Law Offices, P.C. to institute foreclosure.

11. On or about September 22, 2009, Notices of Sale were sent both first class and certified mail to the Property

12. A foreclosure sale was held at the Property on October 23, 2009. A third party purchased the Property.

13. On or about November 23, 2009, Carmen Bailey filed a Motion for a Temporary Restraining Order in the action herein seeking to enjoin the conveyance of the Property.

14. On or about January 25, 2009, Temporary Restraining Order sought by Carmen Bailey denied.

15. On or about February 9, 2010, Wells Fargo filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim.

16. On or about February 15, 2010, Plaintiff filed an Opposition to Wells Fargo's Motion to Dismiss Complaint.

17. A hearing was held on March 10, 2010 and this Honorable Court requested that Defendant Wells Fargo file a supplemental memorandum of law.

**I.    ARGUMENT**

**A. Plaintiff's Complaint should be dismissed as against Wells for failure to state a claim upon which relief can be granted pursuant to Mass R. Civ. P. Rule 12(b)(6).**

Plaintiff's Complaint should be dismissed as against Wells pursuant to Mass.R.Civ.P. 12(b)(6) for failure to state a claim.

Granting a motion to dismiss is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The purpose of Rule 12(b)(6) is to "streamline litigation by dispensing with needless discovery and fact finding." Neitzke v. Williams, 490 U.S.319, 326-327 (1989). The Supreme Judicial Court recently refined the standard for evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), holding that, to survive a motion to dismiss, a complaint must set forth the basis of the Plaintiff's entitlement to relief with "more than labels and conclusions." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) quoting Bell Atl. Corp. v. Twombly, 540 U.S. 544, 555 (2007). While factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level… [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)….." Id., quoting Bell Atl. corp., 550 U.S. at 555. At the pleadings stage, the complaint must set forth "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief…" Id., quoting Bell Atl. Corp., 550 U.S. at 557.

Plaintiff alleges that the title to the Property is defective and as such the foreclosure sale was invalid. Plaintiff asserts that the foreclosure sale that took place on October 23, 2010 based on an alleged defective title, but the complaint is devoid of factual support for

4

this conclusion. Plaintiff fails to cite any statutory or case authority supporting his conclusory allegations. There is no statutory or case authority requiring that merger documents be recorded at each Registry of Deeds or that they be referenced to specific properties or loans. In fact, Plaintiff admits that records at the secretaries of state in both Connecticut and North Carolina confirm that the merger and corporate succession occurred between Shawmut Mortgage Company to Fleet Mortgage Company. Any prudent examiner can verify the merger or acquisition of any entity by reviewing the records in the applicable state's secretary of state's office.

Similarly, Plaintiff's argument that the corporate succession of Washington Mutual Home Loans, Inc. to Washington Mutual Bank, F.A. must fail for the same reasons. Plaintiff acknowledges the existence of an off record secretary's certificate which evidences the succession of assets.

Numerous Massachusetts laws and title standards support defendant's position that the existence of off-record documents do not create a gap in title or effect standing.

Chapter 155: Section 8. Conveyance of land states in part:

"A corporation may convey land to which it has a legal title. Any recordable instrument purporting to affect an interest in real estate, executed in the name of a corporation by the president or a vice president and the treasurer or an assistant treasurer, who may be one and the same person, shall be binding on the corporation in favor of a purchaser or other person relying in good faith on such instrument notwithstanding inconsistent provisions of the articles of organization, certificate of incorporation, charter, special act of incorporation, constitution, by-laws, resolutions or votes of the corporation." The articles

5

of organization of a corporation do not need to be recorded in each registry in which a corporation holds an interest in real estate.

Similarly, foreign corporations do not need to record evidence of their existence. REBA Title Standard No. 11 states in part: "With reference to a deed, mortgage or other recordable instrument purporting to affect an interest in real estate executed by a foreign corporation or a domestic corporation organized under M.G.L. c. 155, Section 156A, 156B or 180, no additional evidence of corporate authority, corporate existence or the identity of the officers executing the instrument is necessary to support such instrument, provided: a.) at the time the instrument is recorded such corporation is in existence or qualified to do business in Massachusetts according to the records at the office of the Secretary of the Commonwealth….".

REBA Title Standard No. 42 states: "A recorded instrument discharging, assigning, or partially releasing a mortgage held of record by an entity which grants mortgage loans or is an assignee of said loans, executed by a person purporting to have authority to so execute without recorded evidence of such person's authority to so execute, is not on that account defective."

Massachusetts recognizes the validity of many off-record transactions. The law is well established in Massachusetts that an unrecorded deed conveying interest in property does not require recording to be considered valid. Neither acknowledgment nor recording is necessary to perfect the validity of a deed as between parties to it. Jacobs v. Jacobs, 321 Mass. 350, 351 (1947).

6

REBA Title Standard 58 states: "A title is not defective by reason of the recording of an Assignment of Mortgage executed either prior, or subsequent, to foreclosure where said Mortgage has been foreclosed, of record, by the Assignee."

The fact that a prior assignment of the mortgage has not been recorded until after the sale will not affect the validity of the sale if no one has been misled thereby. Lamson & Co. v. Abrams, 305 Mass 238 (1940); Montague v. Dawes, 94 Mass 397 (1866).

Plaintiff is not a third party who relied on title and Plaintiff makes no claim in her Complaint that she did not know the holder of the Mortgage nor did she allege that she was in anyway misled.

These statutes and title standards confirm that many documents may exist off the record and do not need to be recorded in order to perfect title so long as the documents otherwise exist and were executed in conformance with other statutes.

Shawmut merged into Fleet. Verification of this merger is before the Court. There is no allegation that this merger was unlawful or invalid; to the contrary, Plaintiff has acknowledged its existence and validity. There is no requirement that the merger be of record. For these reasons, Plaintiff argument on this point fails as a matter of law.

Next, plaintiff claims Washington Mutual Bank, FA did not automatically succeed to the assets of the limited partnership upon acquisition of the last Limited Partner standing. Plaintiff claims the succession of the Partnership's assets required an assignment from the partnership to Washington Mutual Bank, FA to effectuate transfer. REBA Title Standard No. 60 states in part: A conveyance of real estate of a Massachusetts limited liability partnership or a foreign limited liability partnership to a bona fide purchaser for value executed by a person or entity identified as a manager or a

7

person authorized to execute, acknowledge, deliver and record recordable instruments affecting real property of that limited liability company in the certificate of registration or organization thereof, as amended, filed in the Office of the Massachusetts Secretary of State Pursuant to M.G.L.c 108A, Sec. 45 or 47(4), is not defective if: (3) that the limited liability partnership appears from the records of the Office of the Massachusetts Secretary of State to exist.

Plaintiff states in his Opposition that "the purported mortgage holder must demonstrate actual and record evidence of title of both the note and mortgage" relying on the recent Land Court Decisions, U.S. Bank National Association v. Ibanez, Mass.Land Court No. 08-Misc-384283-KCL and consolidated case Wells Fargo Bank, NA v. Larace, No. 08-Misc-386755-KCL.  In fact, these cases stand for the proposition that a foreclosure sale is valid so long as the holder of a mortgage held an assignment in recordable form prior to the date of first publication of the notice of sale.    M.G.L.c. 244, Section 14 requires the foreclosing party to be in possession of a valid assignment of the mortgage in recordable form at the time of notice and sale.  It does not require that the assignment actually be on record consistent with the statutes and case law cited herein.  Here, Wells was the proper party to foreclose as all documents evidencing the chain of title in this matter were in fact in recordable form at the time of the foreclosure sale.

Plaintiff agreed to the terms of the mortgage contract by executing same and as such is bound by such terms. Paragraph 12 of the Mortgage document states in part, "The Covenants and agreements of this Security Instrument shall bind, and benefit the successors and assigns of Lender and Borrower…".By executing the Mortgage document, the borrower agreed to the terms of the contract including Paragraph 12.

8

Paragraph 21 of the Mortgage document states in part: "If the default is not cured on or before the date specified in the Notice (acceleration), Lender at its option may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the Statutory Power of Sale and any other remedies permitted by applicable law."

Plaintiff agreed to the terms of the mortgage including Lenders right to transfer or assign the mortgage and Lenders right to exercise the statutory power of sale in the event of default.

**PLAINTIFF'S CLAIM OF LACK OF NOTICE FAILS AS A MATTER OF LAW**

Plaintiff's claim that she did not receive notice of the foreclosure sale is disingenuous as the record reflects on or about September 22, 2009, Notices of Sale were sent both first class and certified mail to the Property. Paragraph 14 of the Mortgage states in part: Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Wells sent the Notices of Sale in compliance with M.G.L.c. 244 Sec. 14. Borrower does not allege she provided Wells with a different address nor does she allege that she notified them that she could not receive certified mail.

Borrower asserts in the opposition that Borrower has a mailbox that is not accessible by the post-office. If true, borrower had an obligation to inform her mortgage company of an address where she could receive her mail. How is a lender supposed to know that a borrower does not have a mailbox location sufficient to receive notices if the

9

borrower does not notify the lender of same.  Still, in the instant case, notice of sale was also sent via regular mail because borrowers frequently do not claim their certified mail envelopes.  The legislature requires proof of mailing; it does not require proof of receipt of notice.

## CONCLUSION

**WHEREFORE**, the Defendant, Wells moves this Honorable Court to dismiss the complaint as against Wells and grant Wells such further relief as is appropriate and just.

Respectfully submitted,
**WELLS FARGO BANK, NA**


/s/ Christine A. Murphy
Christine A. Murphy
BBO # 643334
Harmon Law Offices, PC
P.O. Box 610389
Newton Highlands, MA  02461-0389
(617) 558-0500

Dated: April 2, 2010

## **CERTIFICATE OF SERVICE**

      I, Christine A. Murphy, state that on April 2, 2010, I served the foregoing Motion to Dismiss and Certificate of Service on behalf of Defendant, Wells Fargo Bank, NA via first class mail to the following:

Michael J. Tremblay
277 Main Street
Marlborough, MA 01752

      /s/ Christine A. Murphy
      Christine A. Murphy, Esquire

April 2, 2010