## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>CARMEN M. BAILEY,<br><br>    Debtor | Chapter 13<br>Case No. 09-44760-HJB |
| CARMEN M. BAILEY,<br><br>    Plaintiff,<br>v.<br><br>WELLS FARGO BANK, NA<br><br>    Defendant | Adversary Proceeding<br>No. 09-4190 |

### MEMORANDUM OF DECISION

Before the Court is a motion filed by defendant Wells Fargo Bank, NA ("Wells Fargo") to dismiss the adversary complaint brought by plaintiff Carmen M. Bailey (the "Debtor"). Through this adversary proceeding, the Debtor seeks to invalidate Wells Fargo's prepetition foreclosure sale of the Debtor's residence on the grounds that Wells Fargo was not the holder of the mortgage at the time of its foreclosure. For the reasons set forth below, including that Wells Fargo's request for dismissal is grounded largely in documents extraneous to the complaint, the Court is able to dismiss some, but not all of the counts of the Debtor's complaint.

1

I.    FACTS AND TRAVEL OF THE CASE

In 1992, the Debtor obtained a $104,000 mortgage loan (the "Mortgage") from Shawmut Mortgage Company ("Shawmut") to purchase her residence in Hudson, Massachusetts (the "Property").[1] In late November 2008, the Debtor fell behind on her mortgage payments, and on August 26, 2009, Wells Fargo, representing itself as the then-current holder of the Mortgage, filed a petition under the Servicemembers Civil Relief Act with the Land Court Department of the Massachusetts Trial Court (the "Land Court") in order to clear the path to a foreclosure of the Property.[2] On October 23, 2009, Wells Fargo conducted a foreclosure sale and the Property was sold to a third-party buyer (the "Foreclosure"). Shortly thereafter, on November 9, 2009, the Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.[3]

On November 23, 2009, the Debtor filed an adversary proceeding against Wells Fargo, seeking, *inter alia*, a declaratory judgment that the Foreclosure was invalid because

---

[1] The Property was originally purchased in 1984 by the Debtor and her former husband. The 1992 Mortgage was incurred by the Debtor to purchase her former husband's interest in the Property pursuant to a judgment of divorce and modification agreement.

[2] The Servicemembers Civil Relief Act, 50 U.S.C. app. §§ 501-591, prevents the foreclosure of a mortgage where the owner of the property is an armed servicemember and the mortgage was entered into prior to the start of military service. See 28 Mass. Prac. § 10.4. In Massachusetts, a special legislative act created a "a court procedure to determine that no one interested in the property is in the military service." Id. Although bringing an action to obtain that determination is not a prerequisite to a valid foreclosure in the case of non-military owners, most mortgagees do bring such actions prior to foreclosure in order to avoid "chilling" a sale. Otherwise, the "mortgagee forecloses at its peril in proceeding without a court determination of military service. If an owner was in the military service at the time of a foreclosure, a sale is invalid." Id. at n.2 (citing John Hancock Mut. Life Ins. Co. v. Lester, 125 N.E. 594, 595 (Mass. 1920)).

[3] See 11 U.S.C. §§ 101 et seq.

Wells Fargo was and is not the true holder of the note and Mortgage.[4] Wells Fargo has filed a motion to dismiss (the "Motion to Dismiss"), to which the Debtor objects. After a hearing on the Motion to Dismiss, the Court took the matter under advisement and gave the parties additional time to file supplemental briefs, which both the Debtor and Wells Fargo have done.

II.     POSITIONS OF THE PARTIES

In her five-count complaint (the "Complaint"), the Debtor seeks: a declaratory judgment that the Foreclosure was invalid (Count I); damages for "Breach of Implied Covenant of Good Faith and Fair Dealing" (Count II); damages for "Infliction of Emotional Distress" (Count III); damages for Wells Fargo's "Unjust Enrichment" (Count IV); and damages for Wells Fargo's purported violations of the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A ("Chapter 93A") (Count V).

### A.     Count I: Declaratory Judgment

#### 1.     *Mortgage-Holder Status*

The central theme of the Debtor's Complaint is the invalidity of the Foreclosure based on Wells Fargo's failure to demonstrate that it was the holder of the Mortgage at the time of the Foreclosure. According to the Debtor, the only recorded documents indexed under the Debtor's name at the registry of deeds (the "Registry") are the Mortgage to Shawmut

---

[4] The Debtor also sought a temporary restraining order and/or preliminary injunction to prevent Wells Fargo from delivering or recording the foreclosure deed. Although the Court declined to enter either a restraining order or injunction, the foreclosure deed has apparently not been recorded. See "[Debtor's] Opposition to Objection to Confirmation by Wells Fargo Bank, N.A." at 3, In re Bailey, Chapter 13 Case No. 09-44760 (Bankr. D. Mass. Aug. 3, 2010), ECF No. 58.

and an assignment of the Mortgage from *Washington Mutual Bank* ("Washington Mutual") to Wells Fargo (the "Assignment"). This gap in the chain of record title – the lack of evidence on record showing a transfer of the Mortgage from Shawmut to Washington Mutual – invalidates the Foreclosure under the Debtor's reading of the Land Court's decision in U.S. Bank National Ass'n v. Ibanez, Nos. 08 Misc 384283 (KCL), 08 Misc 386755 (KCL), 2009 WL 3297551 (Mass. Land Ct. Oct. 14, 2009) ("Ibanez II"),[5] and the Massachusetts Bankruptcy Court's decision in In re Schwartz, 366 B.R. 265 (Bankr. D. Mass. 2007). According to the Debtor, under Ibanez II and Schwartz, a foreclosing party must demonstrate its status as holder of the mortgage as of record at the relevant registry of deeds or the foreclosure may be declared invalid.

In its Motion to Dismiss, Wells Fargo says the Mortgage *was* validly transferred from Shawmut to Washington Mutual through a series of off-record mergers and name changes, and attached several exhibits to the Motion to Dismiss in support of this contention. Although these documents are not recorded at the Registry, Wells Fargo argues that recording is not required under Massachusetts law. Contrary to the Debtor's reading of Ibanez II, Wells Fargo says the court in the Ibanez cases, see supra note 5, did *not* hold that record title must be "perfect" in order to conduct a valid foreclosure sale. Rather, Wells Fargo reads the Ibanez decisions simply as holding that a purported mortgage-holder must actually hold the mortgage at the time notice of the Foreclosure is published, but may wait to record the documents evidencing its holder status until after the foreclosure sale is

---

[5] In Ibanez II, the Land Court detailed its reasons for denying reconsideration of its decision in U.S. Bank National Ass'n v. Ibanez, Nos. 384283 (KCL), 386018 (KCL), 386755 (KCL), 2009 WL 795201 (Mass. Land. Ct. March 26, 2009) ("Ibanez I").

4

completed. Because, according to Wells Fargo, the exhibits attached to the Motion to Dismiss demonstrate an unbroken chain of title from Shawmut to Wells Fargo, the Foreclosure was valid under Massachusetts law.

But the Debtor additionally argues that even these off-record documents do not establish that Wells Fargo was actually the holder of the Mortgage at the time of the Foreclosure. Indeed, the Debtor maintains that additional off-record documents "demonstrate that the[ ] asserted events did not all actually take place." Pl.'s Reply Mem. Opp. to Def.'s M. to Dismiss, at 3, May 4, 2010, ECF No. 41. The Debtor says that, at the very least, Wells Fargo has not shown how title to the Mortgage passed between certain entities connected to a limited partnership, and further notes that an anomalous assignment from Fleet Mortgage Corp. to Fleet Mortgage Corp., signed and notarized on different dates, is not explained. Therefore, according to the Debtor, Wells Fargo's Motion to Dismiss should be denied in favor of further developing the evidentiary record.

    *2.    Notice*

As a second ground for invalidating the Foreclosure, the Debtor says that Wells Fargo failed to provide the Debtor with the statutorily-required notice of the Foreclosure. In its Motion to Dismiss, however, Wells Fargo argues that it did provide the appropriate notice, and has attached copies of Notices of Sale with certified mail stamps to demonstrate that the appropriate notices were sent to the Debtor by both first class and certified mail. Wells Fargo says this is all that was required under Massachusetts law – the foreclosing party need only prove that the appropriate notice was sent; proof of actual receipt is not required.

In response, the Debtor does not challenge Wells Fargo's contention that the notice was sent via certified mail, but says instead that the postal carrier left the notice of certified

5

mail at a seldom-used entrance to her home. According to the Debtor, several days *after* the Foreclosure had been conducted, she found the notice of certified mail among the leaves near the entrance. Because she did not receive the notices prior to the Foreclosure, the Debtor says the Foreclosure sale should be declared void.

### B. Remaining Counts

In addition to the request for Declaratory Judgment, the Debtor seeks damages under various legal theories, each of which depend, in part, on a finding that Wells Fargo was not the holder of the Mortgage at the time of the Foreclosure. In Count II, the Debtor says that Wells Fargo "acted carelessly and recklessly in preserving the custody of important [documents]," Compl. ¶ 39, Nov. 23, 2009, ECF No. 1, and "ma[de] false and erroneous assertions of assignment and corporate succession on the record title," Compl. ¶ 39, and thus impaired the value of the Property and caused the Debtor monetary harm. These actions, the Debtor says, constitute a breach of the implied covenant of good faith and fair dealing for which the Debtor is entitled to damages.

In Count III, the Debtor claims that Wells Fargo's actions were "extreme and outrageous, and beyond the bounds of decency in a civilized society," Compl. ¶ 44, which Wells Fargo "knew or should have known . . . were likely to cause extreme emotional distress to the [Debtor]." Compl. ¶ 44. Thus, the Debtor maintains, Wells Fargo is also liable for the tort of "Infliction of Emotional Distress." In Count IV, the Debtor contends that Wells Fargo was unjustly enriched when it took mortgage payments from the Debtor without properly holding the Mortgage. And finally, in Count V, the Debtor says that all these actions constitute violations of Chapter 93A. Wells Fargo does not directly refute any of these contentions, relying instead on its assertion that it is and was the holder of the Mortgage at

the time of the Foreclosure.

III. DISCUSSION

    A. **Motion to Dismiss Standard**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs," Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), to determine whether the plaintiff has alleged "sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009) (citing Ashcroft v. Iqbal – U.S. –, 129 S.Ct. 1937, 1949 (2009)). Furthermore, the court "is generally limited to considering 'facts and documents that are part of or incorporated into the complaint.'" Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008)); see also Watterson, 987 F.2d at 3.

A court may also consider a limited universe of materials not included in or attached to the complaint, such as" 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Giragosian, 547 F.3d at 65 (quoting Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 20 (1st Cir. 2003)). In some circumstances, the court can also consider "documents the authenticity of which are not disputed by the parties." Watterson, 987 F.2d at 3.

However, if none of these narrow exceptions applies, and the court relies on materials extraneous to the complaint, "it must convert a motion to dismiss into a motion for

summary judgment." Giragosian, 547 F.3d at 65. Conversion to summary judgment, however, requires that the court give the parties a "reasonable opportunity to present all material made pertinent to such a motion." Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 31 (1st Cir. 2000) (quoting Fed. R. Civ. P. 12(b)). Although in some instances the First Circuit Court of Appeals has held that the propriety of conversion is guided by a "functional" analysis and has upheld summary judgment rulings where the parties received no formal notice of conversion, such "*sub silentio* conversion into a motion for summary judgment" is not a practice that receives the First Circuit's general endorsement. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 16 (1st Cir. 2009). Of course, the court can decline to consider any materials not included in or attached to the complaint and decide the motion to dismiss without converting the motion to one for summary judgment. See Garita Hotel Ltd. P'ship, Inc. v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 18 (1st Cir. 1992).

Here, Wells Fargo's Motion to Dismiss is wholly predicated on exhibits extrinsic to the Complaint.[6] Thus, the Court must decide whether to (1) disregard the extraneous materials;

---

[6] The materials attached to the Motion to Dismiss include: (1) the Deed from the Debtor and her former spouse to the Debtor (Exhibit A); (2) Articles of Merger or Share Exchange from the South Carolina Secretary of State's office and "Agreement and Plan of Merger" related to the merger of "Shawmut Mortgage Company" and "Fleet Mortgage Corp." (Exhibit B); (3) "Assignment of Mortgage" from "Fleet Mortgage Corp. successor by merger to Shawmut Mortgage Company" to "Fleet Mortgage Corp." dated May 31, 1996 and notarized February 19, 1997 (Exhibit C); (4) Articles of Merger or Share Exchange from the South Carolina Secretary of State's office and "Agreement and Plan of Merger" related to the merger of "Washington Mutual Home Loans, Inc." and "Fleet Mortgage Corp." (Exhibit D); (5) Secretary's Certificate signed by William L. Lynch as Secretary of "Washington Mutual Bank, FA" and copies of documents filed with the Ohio Secretary of State's office describing the creation, merger, and dissolution of "WMHLI Transfer Interim LP" and "Washington Mutual Home Loans, Inc."(Exhibit E); (6) Order from the Massachusetts Land Court dated June 28, 2002 ordering that "all assets . . . standing in

(2) consider the documents in the context of the Motion to Dismiss; or (3) consider the documents and convert the motion to one for summary judgment. The Court rejects the option of treating the Motion to Dismiss as one for summary judgment. Not only was no formal notice provided to the parties, but the Court questions the propriety of conversion where, as here, the exhibits are largely in inadmissable form and without an accompanying affidavit.

The Court also declines to consider the exhibits within the context of the Motion to Dismiss. While matters of public record may be considered on a motion to dismiss, and while the Debtor has not directly challenged the authenticity of the documents attached to Wells Fargo's Motion to Dismiss, the Debtor argues both that additional documents are necessary to prove Wells Fargo's holder status and that the documents provided, especially the anomalous assignment from Fleet Mortgage Corp. to itself, show that Wells Fargo's narrative of relevant events is incomplete. Because the Debtor raises these challenges, the Court believes "the wiser course is to defer consideration of a summary disposition until the parties have placed before the Court a complete [record]" in order to avoid "invit[ing] a procedural challenge." Knowlton v. Shaw, No. CV-09-334-B-W, 2010 WL 1718106, *4 (D. Me. April 27, 2010). Under the circumstances, the better course is to await a ruling after trial or on a summary judgment motion. Kowlton, 2010 WL 1718106, at *4, 5.

---

the name of Washington Mutual Home Loans, Inc. be deemed assigned to and stand in the name of Washington Mutual Bank, FA, effective as of March 1, 2002 . . . ." (Exhibit F); (7) Name Change Certification stating that, as of April 4, 2005, "Washington Mutual Bank, FA" changed its corporate name to "Washington Mutual Bank." (Exhibit G); (8) Assignment from Washington Mutual Bank to Wells Fargo (Exhibit H); (9) Copies from the United States Postal Service website entitled "Track & Confirm" and copies of Notices of Mortgage Foreclosure Sale and Notices of Intention to Foreclose Mortgage (Exhibit I).

**B.     Count I: Declaratory Judgment**

*1.    Record Title*

Although the Court has just intimated its intention to deny the Motion to Dismiss as to Count I for declaratory relief, the Court finds it necessary to briefly narrow those issues remaining for summary judgment or trial. Absent the materials attached to the Motion to Dismiss, the Complaint and accompanying exhibits are sufficient to state a claim for declaratory relief on the grounds that Wells Fargo was not the holder of the Mortgage at the time of the Foreclosure. Accepting the Debtor's asserted facts as true, there is a gap in the succession of title to the Mortgage from Shawmut to Wells Fargo's assignor, Washington Mutual. However, the Court agrees with Wells Fargo that the Debtor's reading of the Ibanez cases goes too far. The Debtor interprets the Ibanez II holding as requiring a "pristine" title record in order to validly conduct a foreclosure proceeding. But the Land Court made clear in Ibanez I that the foreclosures invalidated in that case were invalidated because the foreclosing lenders were not the actual holders of the mortgages until some time after publication of the foreclosure notices and completion of the foreclosure sales. Ibanez I, 2009 WL 795201, *8. Where the assignment to the foreclosing lender was executed prior to publication and foreclosure, but not recorded until nearly a year after the conclusion of the foreclosure sale, the Court did not find that the foreclosure was invalid under Massachusetts law. Id. Instead, in Ibanez I, the court, interpreting Mass. G.L. ch. 244, § 14, held that the foreclosure in that instance "was not rendered invalid by [the lender's] failure to record the assignment reflecting its status as the holder of the mortgage prior to the foreclosure since it was, in fact, the holder by assignment at the time of the foreclosure, it truthfully claimed that status in the notice, and it could have produced proof of that status (the unrecorded

assignment) if asked." Id.[7]

But the Debtor does not argue only that the record was incomplete, but also that Wells Fargo was *not* actually the holder of the Mortgage at the time of the Foreclosure. That is the issue which the Court must determine in Count I, and the Debtor has adequately pled sufficient facts to demonstrate that Wells Fargo was not the holder of the Mortgage at the time of the Foreclosure. Therefore, the Court must deny the Motion to Dismiss as to Count I.

      2.    *Notice*

Because the Court has declined to consider the materials attached to the Motion to Dismiss, Wells Fargo's offer of documentation to demonstrate that notice of the Foreclosure was sent to the Debtor cannot be considered here. Thus, Wells Fargo's proof must await further consideration on summary judgment or at trial.

    **C.**    **Count II: Breach of Implied Covenant of Good Faith and Fair Dealing**

As the Massachusetts Court of Appeals has recently explained, the implied covenant of good faith and fair dealing is a *contractual* concept – it is a duty implied by law upon contracting parties preventing either party from "'do[ing] anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .'" Targus Grp. Int'l, Inc. v. Sherman, 922 N.E.2d 841, 853 (Mass. App. Ct. 2010) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991); Druker v.

---

[7] The court in Schwartz reached the same conclusion. There, the court found fault with the fact that, in the case before it, the assignment of the mortgage to the foreclosing party was dated *after* the foreclosure sale. But the court also stated its agreement with the foreclosing bank's argument that "[t]here is no requirement that an assignment be recorded prior to the foreclosure," 366 B.R. at 269 (citing Lamson v. Abrams, 25 N.E.2d 374, 376-77 (Mass. 1940)).

Roland Wm. Jutras Assocs., Inc.,348 N.E.2d 763, 765 (Mass. 1976)).

Because the underlying premise of the Debtor's Complaint is that Wells Fargo was *not* the holder of the underlying Mortgage contract, this claim tangles the Debtor in a logical paradox.  If Wells Fargo was *not* the holder of the Mortgage, as the Debtor argues, then there is no contract upon which to base the Debtor's claim that Wells Fargo breached the contractual covenant of good faith and fair dealing. And if Wells Fargo *was* the holder of the Mortgage at the time of the Foreclosure, then the Debtor's central claim fails and there is no wrongdoing upon which to base a claim for breach of good faith and fair dealing.

Even if the Court were to ignore the absence of an underlying contract, and even assuming Wells Fargo was not the holder of the Mortgage at the time of the Foreclosure, the Debtor fails to allege facts from which the Court could find "more than a simple breach."[8] Targus Group, 922 N.E.2d at 853.  "Usually, a breach of the implied covenant involves 'bad faith' conduct 'implicating a dishonest purpose, consciousness of wrong, or ill will in the nature of the fraud.'"  Id.  (quoting Equip. & Sys. for Indus. Inc. v. Northmeadows Constr. Co., 798 N.E.2d 571, 575 (Mass. App. Ct. 2003)) (citing Boston Pilots v. Motor Vessel Midnight Gambler & E. Coast Excursions, Inc., 357 F.3d 129, 135 (1st Cir. 2004); Christensen v. Kingston Sch. Comm., 360 F.Supp. 2d 212, 226 (D. Mass. 2005)).  The Debtor has alleged no facts from which such bad faith, dishonest purpose, consciousness of wrong, or ill will can be implied.  For these reasons, the Motion to Dismiss must be granted as to Count II of the Complaint.

---

[8] Again, the Court is forced to ask, breach of *what*?

D.     Count III: Infliction of Emotional Distress

The Complaint does not clarify whether the Debtor's infliction of emotional distress claim is one for intentional or negligent infliction of emotional distress, and the Court addresses each. To sustain a claim for intentional infliction of emotional distress under Massachusetts law, a plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976) (citations omitted).

Here, any claim for intentional infliction of emotional distress fails, as a matter of law, because even if Wells Fargo conducted the Foreclosure absent actual authority to do so, and even if the Debtor did suffer "extreme emotional distress," the facts pled in the Complaint simply cannot support a finding that Wells Fargo's conduct was intentional. *At most*, Wells Fargo acted negligently if it conducted the Foreclosure without adequate evidence of its status as holder of the Mortgage. And negligence alone will not support a claim for intentional infliction of emotional distress. Tetrault v. Mahoney, Hawkes & Goldings, 681 N.E.2d 1189, 1197 (Mass. 1997).

Nor does the Complaint adequately state a claim for negligent infliction of emotional distress. "[I]n order to recover for negligently inflicted emotional distress [under Massachusetts law, the plaintiff] must prove the following: (1) negligence; (2) emotional

distress; (3) causation; (4) *physical harm* manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton v. Abbott Labs, 437 N.E.2d 171, 181 (Mass. 1982) (emphasis supplied). The Debtor has not alleged any physical harm, and has therefore failed to plead a sufficient claim for relief for negligent infliction of emotional distress. Accordingly, Count III must be dismissed.

### E. Count IV: Unjust Enrichment

A claim for unjust enrichment is grounded in the principle that "[a] person who has been unjustly enriched at the expense of another is required to make restitution *to the other*." Nat'l Shawmut Bank of Boston v. Fidelity Mut. Life Ins. Co., 61 N.E.2d 18, 20 (Mass. 1945) (quoting Restatement: Restitution, § 1) (emphasis supplied); "[a] common instance in which restitution is ordered is where money is paid under a mistake of fact, commonly . . . under a mutual mistake of fact." Id. "The fundamental question . . . is whether the defendant has received money which in equity and good conscience *belongs to the plaintiff*." Id. at 22 (emphasis supplied).

The Debtor's unjust enrichment claim fails because the Debtor is not the party aggrieved under an unjust enrichment analysis even if Wells Fargo was not the holder of the Mortgage when the Debtor made mortgage payments to Wells Fargo. If another entity was actually the mortgagee at the time the Debtor made the payments to Wells Fargo, then *that* entity may have a claim for unjust enrichment. But the Debtor was obligated, under the note and Mortgage, to make her mortgage payments to *someone*, and would be unjustly enriched herself if those payments were returned. Accordingly, Count IV must be dismissed.

  **F.**  **Count V: Chapter 93A**

The Debtor fails to raise any facts or provide legal support for her contention that Wells Fargo's actions constituted unfair and deceptive acts or practices within the meaning of Chapter 93A § 2. Nor has she presented any facts in support of the allegation that Wells Fargo acted willfully or knowingly within the meaning of that statute. Therefore, Count V must be dismissed.

**IV.**  <u>**CONCLUSION**</u>

Because the Debtor has adequately pled a claim for declaratory relief, the Motion to Dismiss will be denied as to Count I. The Complaint fails, however, to adequately plead facts in support of the remaining Counts, and the Motion to Dismiss will be granted as to Counts II-V. An order in conformity with this memorandum shall issue forthwith.

DATED: September 29, 2010   By the Court,

                   *[signature]*

                   Henry J. Boroff
                   United States Bankruptcy Judge