# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
|  | ) | Case No. 09-44760-HJB |
| CARMEN M. BAILEY, | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |
| CARMEN M. BAILEY, | ) | Adversary Proceeding |
|  | ) | No. 09-4190 |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| WELLS FARGO BANK, NA, | ) |  |
|  | ) |  |
| Defendant | ) |  |

## MEMORANDUM OF DECISION

Before the Court are the parties' cross-motions for summary judgment on the debtor's claim that the defendant's prepetition foreclosure of her residence was void under Massachusetts law because the defendant did not provide proper notice of the foreclosure and did not hold the mortgage on the property at either the time it sent notice of the foreclosure or at the time of the foreclosure sale. Although many of the discrete arguments raised in the motions are determinable on summary judgment, for the reasons that follow, remaining issues of material fact preclude the entry of summary judgment for either party.

1

## I.  FACTS AND POSITIONS OF THE PARTIES

Most of the facts relevant to this case are not disputed.[1]  In 1992, the Debtor obtained a loan from Shawmut Mortgage Company ("Shawmut Mortgage") in the amount of $104,000, secured by a mortgage (the "Mortgage") on her condominium located in Hudson, Massachusetts (the "Property").[2]  In 2008, the Debtor fell behind on her mortgage payments, and Wells Fargo Bank, NA ("Wells Fargo"), representing itself as the holder of the Mortgage, commenced its foreclosure process against the Property by filing a petition under the Servicemembers Civil Relief Act with the Land Court Department of the Massachusetts Trial Court (the "Land Court") on August 26, 2009. See Bailey I, 437 B.R. at 724.[3]

On September 22, 2009, Harmon Law Offices, P.C. ("Harmon"), the law office retained by Wells Fargo to foreclose on the Mortgage, mailed both a Notice of Foreclosure Sale and a Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage (the "Foreclosure Notices") to the Debtor by both certified mail, return receipt requested, and by first class mail.  Aff. of Kristin A. Hedvig in Supp.

---

[1] Many of the relevant facts were also detailed in this Court's earlier memorandum regarding the defendant's motion to dismiss.  See Bailey v. Wells Fargo Bank, NA (In re Bailey), 437 B.R. 721 (Bankr. D. Mass. 2010) ("Bailey I").

[2] The Property was originally purchased by the Debtor and her former husband in 1984.  The mortgage loan at issue here was incurred by the Debtor to purchase her former husband's interest in the Property pursuant to a judgment of divorce and modification agreement.  Bailey I, 437 B.R. at 724 n.1.

[3] The Servicemembers Civil Relief Act (the "Servicemembers Act"), 50 U.S.C. App. §§ 501-591, prevents the foreclosure of a mortgage where the owner of the property is an armed servicemember and the mortgage was entered into prior to the start of military service; the act "restricts foreclosures against active duty members of the uniformed services."  Akar v. Fed. Nat'l Mortg. Ass'n, -- F. Supp. 2d --, Civil Action No. 10-10539 NMG, 2012 WL 661458, *12 (D. Mass. Feb. 8, 2012).  In Massachusetts, a special legislative act created a "court procedure to determine that no one interested in the property is in the military service."  See Bailey I, 437 B.R. at 724 n.2 (quoting 28 Mass. Prac. § 10.4).

of Wells Fargo Bank, NA's Mot. for Summ. J. 2 ¶¶ 9, 10 & Exs. A, B, Oct. 6, 2011, ECF

No. 63.  The certified mailings were returned to Harmon as "unclaimed," but the first

class mailings were not returned as undeliverable.  Id. at 2 ¶¶ 9, 10.

The Debtor says that she received none of the Foreclosure Notices until well

after the foreclosure sale was concluded.  She did not find the slip left by the post office

indicating that a certified letter was waiting to be claimed until some weeks after the

sale, as the notice had been attached to her seldom-used front door and not left in the

condominium complex's common mailbox area.  Pl.'s Aff. in Supp. of Cross-Mot. for

Summ. J. 1-2 ¶¶ 3, 4, 6, Nov. 7, 2011, ECF No. 68.  She claims not to have received

the first class mailings due to an illness that prevented her from walking to the common

mailbox area.  Id. at 2 ¶ 7.

On October 23, 2009, Wells Fargo conducted a foreclosure sale at which the

Property was sold to a third-party buyer (the "Foreclosure Sale").  Prior to the recording

of the foreclosure deed, however, the Debtor filed a petition under Chapter 13 of the

Bankruptcy Code.[4]   And on November 23, 2009, the Debtor filed this adversary

proceeding, seeking, *inter alia*, a declaratory judgment that the Foreclosure Sale is void.

Id.  The Court has previously disposed of several other claims contained in the

complaint, see Bailey I, 437 B.R. 721, and the only issue remaining is the validity of the

Foreclosure Sale.

### A.  Notice of the Foreclosure Sale

The Debtor argues that the Foreclosure Sale should be declared void because

she did not receive notice of the Foreclosure Sale as required by Massachusetts

---

[4] See 11 U.S.C. § 101 et seq. (the "Bankruptcy Code" or the "Code").

General Laws ("MGL") ch. 244, § 14.[5]   The Debtor does not dispute Wells Fargo's contention that the required notices were sent to the Debtor's address by both certified and first-class mail.[6]   Rather, the Debtor says she did not receive the certified mailings because the postal worker left the notice of certified mail at her rarely-used front door instead of at the common mailbox station.   According to the Debtor, due to the importance of the rights lost through foreclosure, Wells Fargo simply should have done a better job of insuring that the Debtor actually received the notices.

In response, Wells Fargo argues that Massachusetts law requires only that advance notice of a foreclosure sale be properly mailed, and that the foreclosing entity is not required to prove actual receipt of the notice.   It was the Debtor's responsibility, says Wells Fargo, to provide an address where certified mailings and other notices could be received, and her failure to do so cannot now invalidate the foreclosure.

### B. Whether Wells Fargo Held the Mortgage at the Time of the Foreclosure Sale

1. Travel of the Mortgage

With one notable exception discussed below, the parties are substantially in agreement as to the travel of the Mortgage through various entities from execution through foreclosure.   On February 24, 1992, the Debtor granted the Mortgage to

---

[5] In order to validly foreclose on property under power of sale, "advance notice of the foreclosure sale [must be] provided to the mortgagor, to other interested parties, and by publication in a newspaper published in the town where the mortgaged land lies or of general circulation in that town." U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 50 (Mass. 2011).   The Debtor has not argued that Wells Fargo failed to appropriately publish notice of the Foreclosure Sale in the relevant newspaper, and her arguments are targeted only at the adequacy of the notice provided directly to the Debtor.

[6] According to Wells Fargo, identical copies of the Foreclosure Notices were sent by certified and first class mail to two different versions of the Debtor's address (one identifying the building and unit of the condominium complex in which the Property is located and the other identifying the address by the unit number only).   Hedvig Aff. 2 ¶ 8.   The Debtor has not argued that either form of address was incorrect or incomplete.

Shawmut Mortgage.  Sherri E. Russell Aff. in Supp. of Wells Fargo's Mot. for Summ. J. Ex. B, Oct. 6, 2011, ECF No. 61.  The Mortgage then passed to Fleet Mortgage Corp. ("Fleet Mortgage") when Fleet Mortgage merged with Shawmut Mortgage on May 31, 1996, as confirmed by an assignment of the Mortgage from "Fleet Mortgage Corp. Successor by Merger to Shawmut Mortgage Co." to "Fleet Mortgage Corp." dated May 31, 1996.  Russell Aff. Exs. C, D.  On June 1, 2001, the Mortgage became an asset of Washington Mutual Home Loans, Inc. ("WaMu HLI"), when Fleet Mortgage and WaMu HLI merged.  Russell Aff. Ex. F.

What happened next is the subject of some dispute between the parties, although that dispute turns largely on their different legal interpretations of the events, rather than a true factual dispute.  After the merger between Fleet Mortgage and WaMu HLI, Washington Mutual Bank, FA ("WaMu FA") and one of its wholly-owned subsidiaries,[7] Washington Mutual Mortgage Securities Corp. ("WaMu Securities"), formed WMHLI Transfer Interim LP (the "Limited Partnership"), a limited partnership organized under the laws of Ohio.  WaMu FA was the sole general partner and WaMu Securities the sole limited partner of the partnership.  WaMu HLI (the holder of the Mortgage) then merged with and into the Limited Partnership, and the Mortgage presumably became an asset of the Limited Partnership.  WaMu FA (the general partner) thereafter purchased all of WaMu Securities' (the limited partner) interest in the Limited Partnership, and the Limited Partnership was canceled.  WaMu FA then changed its name to "Washington Mutual Bank," Russell Aff. Ex. H, which in turn assigned the Mortgage to Wells Fargo through an "Assignment of Mortgage" dated March 22, 2007 (the "Assignment"), Russell Aff. Ex. E.

---

[7] WaMu HLI was also a wholly-owned subsidiary of WaMu FA.

2.  <u>Standing</u>

The Debtor argues that Wells Fargo is not the holder of the Mortgage, because WaMu FA did not acquire the assets of the Limited Partnership, which assets included the Mortgage, and thus had no rights in the Mortgage to assign to Wells Fargo.  Wells Fargo maintains that this Court need not consider the Debtor's argument, because the Debtor does not have standing to pursue it.[8]  Characterizing the Debtor's argument as "based upon the premise that the foreclosure sale is void because the assignment to Wells Fargo was invalid," Wells Fargo argues that the Debtor "does not have standing to challenge an assignment," and that only "Shawmut Mortgage, or its assigns, have standing to challenge the assignment."  Wells Fargo Mem. 8.  Wells Fargo further contends that the "injury" – i.e., the Foreclosure Sale – did not result from the Assignment, but occurred as a consequence of the Debtor's default, and therefore the Debtor's challenge to the Assignment is not directed at the cause of her injury.  Finally, Wells Fargo argues, the Debtor cannot attack the Assignment because, under the Mortgage contract, the "mortgagee has the right . . . to assign the mortgage to whomever it chooses.  The assignment merely affects to whom the borrower owes the

---

[8]  In its original brief submitted in support of the summary judgment motion, Wells Fargo supported this argument with a citation to an order from the Land Court, cited as <u>JP Morgan Mortg. Acquisition Corp. v. Lord</u>, Land Court Case No. 10 MISC 427846, Memorandum and Order Denying Defendant's Motion to Vacate Judgment and Dismiss Plaintiffs' Complaint (Nov. 29, 2010) (Long, J.).  <u>See</u> Wells Fargo Mem. in Supp. of Mot. for Summ. J. 8, Oct. 6, 2011, ECF No. 60.  This citation is, at least so far as the Court was able to discern, insufficient to allow easy access to a copy of the referenced order in a publicly-available database, and Wells Fargo failed to attach a copy of the order to its brief.  As such, the Court is unable to lend any persuasive value to the quote from that order provided by Wells Fargo.

obligation." Wells Fargo's Post-Hr'g Mem. in Supp. of Mot. for Summ. J. 4, Dec. 16, 2011, ECF No. 79.[9]

The Debtor first asserts that Wells Fargo mischaracterizes the nature of her injury and its causes. According to the Debtor, "[i]t is not the foreclosure *per se* that caused harm . . . . It is the fact that Wells Fargo lacked record title as the holder of the mortgage and thereby lacked authority to foreclose." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 5, Nov. 7, 2011, ECF No. 67. Thus, the Debtor concludes that she has standing to challenge Wells Fargo's right to foreclose. Furthermore, the Debtor contends, the Debtor's position as a Chapter 13 debtor gives her standing as the estate's representative to seek a determination of her property rights, to object to claims, and to pursue causes of action that would benefit the estate.

        3.  The Land Court Order

Even if the Debtor were found to have standing to prosecute the declaratory judgment claim, Wells Fargo maintains that it held the Mortgage at the time it initiated foreclosure proceedings and thus the Foreclosure Sale was valid. While Wells Fargo generally asserts that WaMu FA's purchase of WaMu Securities' interest in the Limited Partnership caused the assets of the Limited Partnership (including the Mortgage) to become assets of WaMu FA, Wells Fargo does not rely on documentary evidence of these various transactions to support its contention that the Mortgage traveled from WaMu HLI to Washington Mutual (and ultimately to Wells Fargo). Instead, Wells Fargo relies on an order issued by the Land Court dated June 28, 2002, see Russell Aff. Ex.

---

[9] At the hearing on the parties' motions for summary judgment, counsel for Wells Fargo also directed the Court's attention to two additional cases (which were not, as represented by counsel, cited in Wells Fargo's brief). Those cases, Kiah v. Aurora Loan Servs., LLC, Slip Copy, Civil Action No. 10-40161-FDS, 2011 WL 841282 (D. Mass. March 4, 2011), and In re Lopez, 446 B.R. 12 (Bank. D. Mass. 2011), are discussed later in this memorandum.

G, as establishing Washington Mutual's title to the assets of the Limited Partnership, and thus its ownership of the Mortgage at the time the Assignment to Wells Fargo was executed.  In its order, the Land Court stated that:

> After due proceedings, it is **ORDERED:** that that [sic] all assets (including without limitation all instruments of record) standing in the name of Washington Mutual Home Loans, Inc. be deemed assigned to and stand in the name of Washington Mutual Bank, FA, effective as of March 1, 2002, the date of the sale and assignment of Limited Partner Interest.

Russell Aff. Ex. G. [10]

The Land Court Order was issued after WaMu FA filed an Ex-Parte Subsequent Petition (the "S-Petition") in the Massachusetts Land Court on June 2, 2002.  According to Wells Fargo, the S-Petition, filed pursuant to MGL ch. 185, § 114, was not limited to any specific piece of property, and Wells Fargo places emphasis on the order's reference to "*all*" assets of WaMu HLI, which assets would have included the Debtor's Mortgage.  Additionally, Wells Fargo says that a search at the Plymouth Registry District of the Land Court shows that the Land Court Order was assigned an individual document number not associated with a particular property address, thus supporting its argument that the order is effective against all property, registered or unregistered, and including the Debtor's Property.

Wells Fargo therefore contends that the Land Court Order effectively "assigned" all of WaMu HLI's assets, including the Mortgage, to WaMu FA, even if the assets of WaMu HLI failed to otherwise become assets of WaMu FA by operation of law.  According to Wells Fargo, this Court has no jurisdiction to "invalidate" the Land Court

---

[10] Viewing both parties' arguments relative to the Land Court Order to be somewhat sparse, at the conclusion of the hearing on the summary judgment motions, the Court asked the parties to provide further briefing on the preclusive effect, if any, of the Land Court Order.  Both parties have done so.

Order, because, under the Rooker-Feldman doctrine, the Court is "precluded 'from exercising subject matter jurisdiction where the issues in the case are "inextricably intertwined" with questions previously adjudicated by a state court, such that a federal district [or bankruptcy] court would be in the unseemly position of reviewing a state court decision for error.'" Wells Fargo Post-Hr'g Mem. 5 (quoting Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 44 (1st Cir. 2003)).

The Debtor maintains, however, that the Land Court Order is not binding on either the Debtor or this Court. The Debtor characterizes the S-Petition as an action to correct the certificate of title on a particular piece of registered land (not the Property at issue in this case). Arguing that the S-Petition was essentially an *in rem* proceeding, the Debtor says that the Land Court Order has no preclusive effect here.

4. The Limited Partnership

Because Wells Fargo relies on its standing argument and its assertion that the Land Court Order precludes further litigation regarding whether the Mortgage was transferred from WaMu HLI to WaMu FA, it has not provided further documentation or legal argument to support its contention that WaMu FA's purchase of WaMu Securities' interest in the Limited Partnership transferred all the partnership assets to WaMu FA.

The Debtor argues, however, that the Mortgage, as an asset of the Limited Partnership, was never transferred to WaMu FA and instead remains an asset of the Limited Partnership.[11] According to the Debtor, under Ohio's limited partnership law,

---

[11] The Debtor raises additional arguments premised on the fact that many of the documents relied on by Wells Fargo to demonstrate how ownership of the Mortgage changed, through various corporate mergers and name changes, were not recorded in the relevant Registry of Deeds. The Debtor has asserted, with no citation to relevant case law or statute, that those documents should have been recorded because the various corporations were foreign to Massachusetts and were not registered to do business in Massachusetts. Because they were

the dissolution of the Limited Partnership did not terminate the legal existence of the

partnership.   Instead, the Debtor argues that the Limited Partnership remains in

existence (and in possession of its assets) until the completion of the winding up of the

partnership's affairs (which winding up would include the distribution of partnership

assets).  Because no evidence relative to the winding up process or distribution of the

partnership assets has been provided, the Debtor says Wells Fargo has failed to

demonstrate that title to the Mortgage ever passed from the Limited Partnership to

WaMu FA.  Accordingly, the Debtor argues, the Assignment could not have transferred

the Mortgage to Wells Fargo.


II.    <u>DISCUSSION</u>

**A.  Summary Judgment Standard**

Summary Judgment should be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a), made applicable to this proceeding by Fed. R.

Bank. P. 7056.  "[W]hile the absence of a genuine dispute as to a material fact is a

necessary prerequisite to a finding of summary judgment in favor of the movant," the

---

not recorded, the Debtor says a title examiner would not be able to ascertain how title ultimately
vested in Wells Fargo.  In <u>Bailey I</u>, however, the Court specifically rejected the Debtor's
assertion that the documents *on record* at the time of the foreclosure had to demonstrate an
unbroken chain of ownership of the Mortgage from Shawmut Mortgage to Wells Fargo.  437
B.R. at 728-29.  And the SJC has subsequently agreed, holding that although a foreclosing
party must have evidence that they hold the Mortgage at the time the foreclosure notice is sent,
recording of those documents prior to the sending of the foreclosure notice, while perhaps the
best practice, is not required.  <u>See</u> <u>U.S. Bank Nat'l Ass'n v. Ibanez</u>, 941 N.E.2d 40, 53 (Mass.
2011); <u>Bailey I</u>, 437 B.R. at 728-29 (citing <u>U.S. Bank Nat'l Ass'n v. Ibanez</u>, Nos. 384283 (KCL),
386018 (KCL), 386755 (KCL), 2009 WL 795201 (Mass. Land Ct. March 26, 2009); <u>U.S. Bank
Nat'l Ass'n v. Ibanez</u>, Nos. 08 Misc. 384283 (KCL), 08 MISC. 386755 (KCL), 2009 WL 3297551
(Mass. Land Ct. Oct. 14, 2009), <u>aff'd</u> 941 N.E.2d 40).

moving party must still "show that it is *entitled to* judgment as a matter of law." <u>Tomsic</u>
<u>v. Sales Consultants of Boston, Inc. (In re Salience Assoc., Inc.)</u>, 371 B.R. 578, 585
(Bankr. D. Mass. 2007) (citing <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 764
(1st Cir. 1994)).   In resolving cross motions for summary judgment, the court "must
resolve all genuine factual disputes in favor of the party opposing each such motion and
draw all reasonable inferences derived from the facts in that party's favor. <u>Atlantic Fish</u>
<u>Spotters Ass'n v. Evans</u>, 321 F.3d 220, 224 (1st Cir. 2003); <u>see also</u> <u>E.E.O.C. v.</u>
<u>Steamship Clerks Union, Local 1066</u>, 48 F.3d 594, 603 n.8 (1st Cir. 1995) (the "court
must consider each motion separately, drawing inferences against each movant in
turn").

### B.  Foreclosure by Power of Sale in Massachusetts

In Massachusetts, foreclosure of a mortgage may be undertaken without judicial
authorization.  <u>Ibanez</u>, 941 N.E.2d at 49.  "With the exception of the limited judicial
procedure aimed at certifying that the mortgagor is not a beneficiary of the
Servicemembers Act, a mortgage holder can foreclose on a property . . . by exercise of
the statutory power of sale, if such a power is granted by the mortgage itself." <u>Id.</u>  The
Mortgage here did grant that power, thus "includ[ing] by reference the power of sale set
out in G.L. c. 183, § 21, and further regulated by G.L. c. 244, §§ 11-17C." <u>Id.</u>  "Under
Massachusetts General Laws chapter 183, section 21, after a mortgagor defaults in the
performance of the underlying note, the mortgagee may sell the property at a public
auction, conveying the property to the purchaser in fee simple." <u>Culhane v. Aurora</u>
<u>Loan Servs. of Neb.</u>, -- F. Supp. 2d --, Civil Action No. 11-11098, 2011 WL 5925525, *6
(D. Mass. Nov. 28, 2011) (citing <u>Ibanez</u>, 941 N.E.2d at 49).   Because the statutory

power of sale allows a mortgage holder to foreclose on property "without immediate judicial oversight," the Massachusetts Supreme Judicial Court (the "SJC") has ruled that "one who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void." Ibanez, 941 N.E.2d at 49-50 (quoting Moore v. Dick, 72 N.E. 967, 968 (Mass. 1905)).

### C. Sufficiency of Notice

A mortgage holder who forecloses by power of sale must comply with the notice requirements set forth in MGL ch. 244, § 14.  "Advance notice of the foreclosure sale must be provided to the mortgagor by registered mail and other interested parties by publication in a newspaper published or generally circulating in the town where the mortgaged property lies."[12] Culhane, 2011 WL 5925525, at *7; Mass. Gen. Laws ch. 244, § 14.  The Debtor has challenged neither the content of the Foreclosure Notices nor the fact that the notices were mailed to the Debtor by registered mail.  See Mass. Gen. Laws ch. 4, § 7 ("'Registered mail,' when used with reference to the sending of notice . . . shall include certified mail."); see also Town of Andover v. State Fin. Servs., Inc., 736 N.E.2d 837, 840 (Mass. 2000); Carmel Credit Union v. Bondeson, 772 N.E.2d 1089, 1091 & n.4 (Mass. App. Ct. 2002) (quoting Durkin v. Siegel, 165 N.E. 2d 81, 83 n.3 (Mass. 1960)).

The law in Massachusetts is clear; the requirement that the notice be mailed to the owner of the relevant property "is satisfied by mailing and *nonreceipt is irrelevant.*" Hull v. Attleboro Sav. Bank, 596 N.E. 2d 358, 362 (Mass. App. Ct. 1992) (emphasis supplied); see also Lindsey v. First Horizon Home Loans, Civil Action No. 11-10408-

---

[12] As noted earlier, there is no assertion or evidence that notice of the Foreclosure Sale was not published in a relevant newspaper as required by MGL ch. 244, § 14.

FDS, 2012 WL 689745, *3 (D. Mass. March 1, 2012).  Wells Fargo has submitted

copies of the Foreclosure Notices sent to the Debtor bearing certified mailing stamps.

<u>See</u> Hedvig Aff. Ex. A.   Wells Fargo admits that the certified mail was returned

unclaimed, but there is no dispute that the Foreclosure Notices were sent.  Accordingly,

there being no material issue of fact in dispute, the Court must rule as a matter of law

that Wells Fargo complied with the notice requirement under MGL ch. 244, § 14, and

summary judgment should be entered in favor of Wells Fargo on the Debtor's claim that

notice of the Foreclosure Sale was insufficient.

### D.  Debtor's Standing to Challenge the Foreclosure Sale

Even if the notice of the Foreclosure Sale were proper, the Debtor also argues

that the sale should be declared void, as Wells Fargo is not (and was not) the holder of

the Mortgage and thus had no authority to exercise the statutory power of sale.   The

Debtor is correct in her general assertion that, absent Wells Fargo's status as holder of

the Mortgage, the Foreclosure Sale is void; as the SJC has explained:

> One of the terms of the power of sale that must be strictly adhered to is
> the restriction on who is entitled to foreclose.  The "statutory power of
> sale" can be exercised by "the mortgagee or his executors, administrators,
> successors or assigns." G.L. c. 183, § 21.  Under G.L. c. 244, § 14, "[t]he
> mortgagee or person having his estate in the land mortgaged, or a person
> authorized by the power of sale, or the attorney duly authorized by a
> writing under seal, or the legal guardian or conservator of such mortgagee
> or person acting in the name of such mortgagee or person" is empowered
> to exercise the statutory power of sale.  Any effort to foreclose by a party
> lacking "jurisdiction and authority" to carry out a foreclosure under these
> statutes is void.

<u>Ibanez</u>, 941 N.E.2d at 50.[13]

---

[13] And, as the SJC explained further in <u>Ibanez</u>, if the foreclosing entity was not the holder of the
mortgage at the time it sent notice of the foreclosure and claimed status as holder of the
mortgage, "the failure to identify the [correct] holder of the mortgage in the notice of sale may
render the notice defective and the foreclosure sale void."  <u>Id.</u>

Despite the SJC's clear admonition that failure to hold the mortgage at the time of foreclosure renders a foreclosure sale void, Wells Fargo argues that the Debtor cannot challenge the Foreclosure Sale through her request for declaratory judgment, because the Debtor lacks standing to challenge the Assignment of the Mortgage. This argument is unpersuasive for several reasons.

First, the thrust of the Debtor's argument is not an attack on the Assignment itself, but instead a challenge to Wells Fargo's assertion that Washington Mutual held the Mortgage at the time it executed the Assignment. The Debtor's claim that Washington Mutual did not own the Mortgage at the time it purported to assign it is not a "claim[ ] that the assignment . . . is defective," but rather a claim that, as a stranger to the Mortgage, Washington Mutual could not have passed any ownership rights in the Mortgage to Wells Fargo.[14]

This case is thus distinguishable from those where the courts have concluded that borrowers lacked standing to challenge assignments of mortgages on grounds that assignments failed to comply with the terms of underlying Pooling and Servicing Agreements ("PSAs"). In such cases, the courts have found that the borrowers lacked standing to challenge a mortgage assignment based on an alleged breach of an

---

[14] In her post-hearing brief, the Debtor raises an additional scattershot attack on the Assignment directly, arguing that the individual who executed the Assignment has been the subject of "widespread national scrutiny." Pl.'s Post-Hr'g Mem. in Supp. of Pl.'s Mot. for Summ. J. 20, Jan. 5, 2012, ECF No. 81. Based on allegations raised in other (unrelated) cases, the Debtor maintains that the "Assignment was prepared . . . years after the events recited therein, and signed by someone who had no personal knowledge of the facts or events," and is "nothing short of outright fraud." Id. at 21. While the Court could simply ignore this untimely argument to which Wells Fargo has had no opportunity to respond, see Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia), 452 B.R. 319, 323 (B.A.P. 1st Cir. 2011), the Court feels compelled to note its lack of merit based on extant case law, see, e.g., Id. at 323-24; Culhane, 2011 WL 5925525, at *17-18; Peterson v. GMAC Mortg., Civil Action No. 11-11115-RWZ, 2011 WL 5075613, *4-5 (D. Mass. Oct. 25, 2011); Rosa v. Mortg. Elec. Sys., Inc., -- F. Supp. 2d --, Civil Action No. 10-12141-PBS, 2011 WL 5223349, *4-5 (D. Mass. Sept. 29, 2011); In re Marron, 455 B.R. 1, 8 (Bankr. D. Mass. 2011); Kiah, 2011 WL 841282, at *7.

underlying PSA, because the borrowers were neither parties to nor third-party beneficiaries under those agreements.  See, e.g., Juarez v. U.S. Bank Nat'l Ass'n, Civil Action No. 11-10318, 2011 WL 5330465, *4 (D. Mass. Nov. 4, 2011); In re Correia, 452 B.R. at 324 (citing In re Almeida, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009)).  The Debtor's argument here is not based on the breach of an underlying contract to which she was not a party; instead, her argument is aimed at the ownership of the Mortgage at the time it was purportedly assigned.

The Court also finds the two cases relied on by Wells Fargo to be inapposite here.  In In re Lopez, Judge Hillman discussed standing only in the context of a debtor's allegation that a bank's denial of his request for a loan modification was actionable under the Home Affordable Modification Program ("HAMP").  446 B.R. 12, 21 (Bankr. D. Mass. 2011).  Noting his agreement with the "nearly unanimous" conclusion that HAMP "affords no private right of action and that borrowers lack standing as third-party beneficiaries to enforce the HAMP guidelines under a breach of contract theory," Judge Hillman ultimately concluded that the debtor had failed to adequately plead his standing under HAMP.  Id. at 21-22.[15]  Because the issue in Lopez was the Debtor's standing under HAMP, it has no relevance to the Debtor's standing to question Wells Fargo's status as holder of the Mortgage in this case.

In Kiah v. Aurora Loan Servs., LLC, Civil Action No. 10-40161-FDS, 2011 WL 841282 (D. Mass. March 4, 2011), the borrower filed an action seeking "a declaratory judgment that 'the *mortgage* on record [was] legally null and void.'"  Id. at *1 (emphasis

---

[15] While Judge Hillman did address the debtor's additional attacks on an assignment of the mortgage, those claims were found deficient *not* because the debtor lacked standing to challenge the assignment of his mortgage, but because the Debtor had failed to articulate any affirmative objection to the allegedly defective assignment in that case.  Id. at 19.

supplied).    Among the various allegations raised in the complaint was the borrower's assertion that the mortgage assignment was invalid because it was given for no consideration.    Id. at *6.    In rejecting that argument, Judge Saylor noted that the allegation was not only speculative, but that the borrower's standing to contest the assignment *on the basis of lack of consideration* was questionable - since it was doubtful whether the plaintiff could demonstrate a "compensable injury if the consideration was not paid."    Id.    The Debtor here is not seeking a declaration that the Mortgage is *void*, nor is she contesting the consideration given for the Assignment. Accordingly, the Court finds Judge Saylor's discussion of standing in Kiah to be irrelevant to the issues raised here.

And while recent cases have contained somewhat broader language to the effect that a borrower has no standing to challenge a mortgage assignment, as the borrower is neither a party to, nor a third-party beneficiary of, the assignment, see, e.g., Oum v. Wells Fargo, N.A., -- F. Supp. 2d --, Civil Action Nos. 11-11663-RGS, 11-11683-RGS, 2012 WL 390271 (D. Mass. Feb. 8, 2012); Wenzel v. Sand Canyon Corp., -- F. Supp. 2d --, Civil Action No. 11-30211-JCB, 2012 WL 219371 (D. Mass. Jan. 5, 2012); Peterson, 2011 WL 5075613, the Debtor is not, as previously discussed, challenging the Assignment *per se*.    Instead, the Debtor questions only whether the assignor had any rights in the Mortgage to transfer to the assignee.[16]

---

[16] The Court expresses no opinion here on whether it would agree with those courts that have rejected challenges to foreclosures based on the borrowers' lack of standing to challenge an assignment and have concluded that the SJC, in Ibanez, "did not intend to 'give [ ] Massachusetts mortgagors a legally protected interest in assignments to which they are not a party . . . .'" Oum, 2012 WL 390271, at *6 (quoting Peterson, 2011 WL 5075613, at *3).    The Court notes, however, that other courts in this district *have* assumed jurisdiction and recognized a borrower's standing to bring such actions based on the SJC's conclusion that foreclosures conducted by non-mortgage holders are void.    See, e.g., Rosa, 2011 WL 5223349, at *3 n.5

The Debtor has standing to challenge the validity of the Foreclosure Sale because she has demonstrated "a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury." Antilles Cement Corp. v. Fortuno, 670 F.3d 310, 317 (1st Cir. 2012) (quoting Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009)). The injury to the Debtor is the purported termination of her equity of redemption in the Property by a party who had no authority to foreclose that equity of redemption.[17]  If Wells Fargo did not hold the Mortgage at the time it foreclosed, then the injury is traceable directly to Wells Fargo, as it is the allegedly invalid foreclosure by Wells Fargo that constitutes the Debtor's claimed injury.  Should the Court determine that the Foreclosure Sale is void, the Debtor will retain the equity of redemption – an interest in the Property that cannot be lightly disregarded.

Also of paramount importance is the Debtor's status as a Chapter 13 debtor.  By dint of § 1322(b)(5), Congress has promised such debtors the opportunity to propose a Chapter 13 Plan that "provide[s] for the curing of any default within a reasonable time

("Under Massachusetts law, 'any effort to foreclose by a party lacking "jurisdiction and authority" to carry out a foreclosure . . . is void.' The Plaintiffs appear to have standing under this principle, because the allegations, if proven, would render the foreclosure sale void, under Massachusetts law."); see also Culhane, 2011 WL 5925525, at *12 (possible cloud on title that may reduce value of property at foreclosure and thus increase deficiency claim was sufficient to give borrower standing to challenge authority of assignor to assign mortgage); cf. Bevilacqua v. Rodriguez, 955 N.E.2d 884, (Mass. 2011) (mortgagor retains an interest in the property by holding the equity of redemption until a valid foreclosure sale is conducted).

[17] "In Massachusetts, a 'mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains.'" Bevilacqua, 955 N.E.2d at 895 (quoting Maglione v. BancBoston Mortg. Corp., 557 N.E.2d 756, 757 (1990)). The equitable title, or "equity of redemption," retained by the mortgagor "[is] the basic and historic right of a debtor to redeem the mortgage obligation after its due date, and ultimately to insist on foreclosure as the means of terminating the mortgagor's interest in the mortgaged real estate." Id. (quoting Restatement (Third) of Property (Mortgages) c.3, Introductory note at 97 (1996)).

17

and maintenance of payments while the case is pending," thereby allowing a debtor to "restore and maintain his currency on a longterm debt." In re Euliano, 442 B.R. 177, 186 (Bankr. D. Mass. 2010) (quoting 11 U.S.C. § 1322(b)(5); Grubbs v. Houston First Am. Sav. Ass'n, 730 F.2d 236, 245 (5th Cir. 1984)).

But under § 1322(c)(1) of the Bankruptcy Code, a Chapter 13 debtor's ability to cure a default on a mortgage note through a Chapter 13 Plan is only available "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1); see also In re Mellino, 333 B.R. 578, 584 (Bankr. D. Mass. 2005) ("Section 1322(c)(1) of the Bankruptcy Code allows a debtor to cure his or her default under a mortgage unless the property has been sold at a foreclosure sale which was conducted in accordance with applicable state law.") (citing In re Crichlow, 322 B.R. 229, 234 (Bankr. D. Mass. 2004)).

And, as previously noted, in Massachusetts, a foreclosure sale is "conducted in accordance with applicable nonbankruptcy law" only if the foreclosing party held the mortgage at the time the notice of foreclosure was sent and the foreclosure sale conducted. The Debtor's ability to cure the default and reinstate the Mortgage through a Chapter 13 plan thus turns on whether or not the Foreclosure Sale was validly conducted under Massachusetts law *by an entity holding the Mortgage*. For these reasons, the Court determines that the Debtor has standing to seek a ruling on the validity of the Foreclosure Sale.[18]

---

[18] In its post-hearing brief, Wells Fargo argues, as an additional ground for affirming the validity of the Foreclosure Sale, that any defect in the Assignment could, in accordance with the SJC's statements in Ibanez, be resolved by the recording of a "confirmatory assignment." While the SJC indicated that a post-foreclosure "confirmatory assignment" *may* be used in cases where a valid pre-foreclosure assignment of mortgage was made but "is not in recordable form or bears some defect," the court also stressed that such a confirmatory assignment "cannot confirm an

### E.  Effect of the Land Court Order

Wells Fargo next argues that the substance of the underlying transactions affecting the Mortgage should not be reexamined, because the Land Court Order established WaMu FA's ownership of WaMu HLI's assets (including the Mortgage), and the Assignment therefore validly conveyed ownership to Wells Fargo prior to the Foreclosure Sale.   But Wells Fargo fails to adequately articulate any legal theory supporting its contention that both the Debtor and the Court are bound by the Land Court Order.   Wells Fargo refers only briefly to the Rooker-Feldman doctrine as preventing this Court from deciding questions regarding the ownership of the Mortgage, maintaining that this Court has no jurisdiction to "invalidate" the Land Court Order.

The Rooker-Feldman doctrine is not applicable here, because the Debtor was not a party to the Land Court action.   See Lance v. Dennis, 546 U.S. 459, 465 (2006) (Rooker-Feldman does not apply where party was not party to the state court proceeding); Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (The Rooker-Feldman Doctrine has been limited to "cases brought by *state-court losers* complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").   Similarly, although this Court is bound by 28 U.S.C. § 1738 (the Full Faith and Credit Statute) to "give the same preclusive effect" to the Land Court Order that the order "would be given in the courts of [Massachusetts]," In re Ellis, 354 B.R. 11, 17 (Bankr. D. Mass. 2006) (quoting Migra v. Warren City Bd. of Educ., 465 U.S. 75, 81 (1982)), Wells Fargo has provided no reason why Massachusetts courts would give

---

assignment that was not validly made earlier." Ibanez, 941 N.E.2d at 55.  If the Court finds that Washington Mutual did not hold the Mortgage at the time the Assignment was executed, then there is no "valid" assignment to which a confirmatory assignment could refer.

preclusive effect to the Land Court Order in an unrelated case involving non-parties to the Land Court action.

As Wells Fargo itself notes, "[t]he purpose of an S-Petition, filed pursuant to G.L. c. 185, § 114, et seq., is to *alter certificates of title on registered land.*" Wells Fargo Post-Hr'g Mem. 2 (emphasis supplied).[19] There is no indication, despite its broad language, that the Land Court Order applied to any property other than the property affected by the registered certificate of title at issue in that case. The Property here, in fact, is not registered land. Although the Land Court may, in some cases, exercise jurisdiction over recorded land, see MGL ch. 185, § 1, the evidence produced by Wells Fargo indicates that the Land Court Order was issued pursuant to its jurisdiction over a particular certificate of title in registered land, and thus has no preclusive effect here. Similarly, even if this Court were to reach a conclusion different than that reached by the Land Court and find that WaMu HLI's assets were not transferred to WaMu FA, such a ruling would in no way "invalidate" the Land Court's Order. Just as that order has no preclusive effect in the case before this Court, the decision reached in this case would not affect the parties involved in the case before the Land Court.

---

[19] In Massachusetts, real property may be either *registered* or *unregistered (recorded)* land. Real estate in Massachusetts primarily consists of unregistered land, which is conveyed by the delivery of a deed. 28 Mass. Prac., Real Estate Law § 4.59. Registered land is not recorded in the same manner as other real estate, but is governed by Massachusetts statutes codifying a version of what is commonly referred to as a "Torrens System" for the registration of land titles. See, e.g. The Torrens System, 25 Law. & Banker. Cent. L.J. 226 (1932). Registered land has gone through an adjudication process in order to quiet title, and "the Commonwealth guarantees and insures the title to land that is registered." 28 Mass. Prac., Real Estate Law § 22.1. A certificate of title in registered property is stored on the "registered land side of the registry of deeds," 28 Mass. Prac., Real Estate Law § 31A.1, and may be altered only through an action (like the S-Petition referred to here) brought in the Land Court, see MGL ch. 185 § 114.

In sum, because the Land Court Order was issued in a case unrelated to the one before this Court, and involved neither the Debtor nor the Property at issue here, and because Wells Fargo has not articulated any other reason why the order has preclusive effect in this case, the Court concludes that the Land Court Order is insufficient to establish, for purposes of this case, that Washington Mutual held the Mortgage when it executed the Assignment to Wells Fargo.

### F.  So Who Holds the Mortgage?

To re-cap: the parties agree that the Mortgage was originally given to Shawmut Mortgage.  Shawmut Mortgage merged with Fleet Mortgage, which in turn merged with WaMu HLI.  WaMu HLI then merged with the Limited Partnership (created in Ohio), and the Mortgage thus became an asset of the Limited Partnership.  The sole general partner (WaMu FA) then purchased the sole limited partner's (WaMu Securities) interest in the Limited Partnership and the partnership was "canceled" pursuant to Ohio law. See Sale & Assignment of Limited Partner Interest and "Washington Mutual bank, FA Secretary's Certificate," both attached as exhibits to Pl.'s Post-Hr'g Mem. and Wells Fargo's Post-Hr'g Mem; see also Ohio Rev. Code § 1782.10 (A) ("A certificate of limited partnership shall be canceled . . . at any other time there are no limited partners.").

But neither party has provided evidence demonstrating what happened to the *assets* of the Limited Partnership.  Under Ohio law, "a partnership interest is personal property."  Ohio Rev. Code § 1782.39.  The assignment of a partnership interest transfers only the interest in the partnership and the right to receive distributions as a partner; it does not transfer the underlying partnership assets themselves.  Ohio Rev. C. § 1782.40.  Thus, WaMu FA's purchase of WaMu Securities' interest in the Limited

Partnership did not necessarily transfer the assets of the Limited Partnership (which included the Mortgage) to WaMu FA.

The Debtor assumes that the Limited Partnership was merely "dissolved," and therefore would have the Court conclude that, consistent with Ohio law, the assets of the Limited Partnership remain with the Limited Partnership until otherwise distributed through the "winding up process." While the Debtor is correct that, under Ohio law, the assets of a Limited Partnership do not vest in the partners as a matter of law and must be appropriately distributed, see Ohio Rev. Code § 1782.46, it is possible that the Limited Partnership assets vested in WaMu FA pursuant to the underlying partnership agreement or as a result of distribution during the winding-up process. See id. ("*Except as otherwise provided in the partnership agreement*, the general partners . . . . may wind up the affairs of a limited partnership . . . [and] may do any or all of the following . . . .: (3) Dispose of and convey the property of the limited partnership; . . . (5) Distribute to the partners any remaining assets of the limited partnership."). Simply put, there is insufficient evidence on the summary judgment record to conclude either that the Mortgage remains an asset of the Limited Partnership (as the Debtor argues) or became property of WaMu FA (as Wells Fargo argues). Accordingly, the Court cannot determine whether Washington Mutual owned the Mortgage at the time it executed the Assignment to Wells Fargo and both parties' motions for summary judgment must be denied.

III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny both the Debtor's and Wells Fargo's motions for summary judgment.  However, in accordance with the conclusions of law reached herein, a further evidentiary hearing is necessary only to resolve the limited issue of whether the Mortgage, as an asset of the Limited Partnership, ultimately became an asset of Washington Mutual, allowing the assignment of the Mortgage from Washington Mutual to Wells Fargo.  An order in conformity with this memorandum shall issue forthwith.


DATED: April 10, 2012                    By the Court,


                                        _____
                                        Henry J. Boroff
                                        United States Bankruptcy Judge